**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BARRY NEWHOUSE, AYESHA TANZEEM,
DONG HYUK LEE, KSENIA TURKOVA, PEN
AMERICA, REPORTERS WITHOUT BORDERS,
INC., and REPORTERS SANS FRONTIÈRES,
c/o Emery Celli Brinckerhoff Abady Ward &
Maazel LLP, One Rockefeller Plaza, 8th Fl. New
York, NY 10020

     *Plaintiffs*,

  -against-

U.S. AGENCY FOR GLOBAL MEDIA,
Wilbur J. Cohen Federal Building
330 Independence Avenue SW
Washington, DC 20407,

MICHAEL RIGAS, in his official capacity as
Acting CEO of the U.S. Agency for Global Media,
Wilbur J. Cohen Federal Building
330 Independence Avenue SW
Washington, DC 20407, and

KARI LAKE, in her official capacity as a federal
employee,
Wilbur J. Cohen Federal Building
330 Independence Avenue SW
Washington, DC 20407,

     *Defendants*.

Case No. 25 Civ. _____

**<u>COMPLAINT</u>**

## INTRODUCTION

1.  This is a case about censorship and propaganda carried out by the United States government. It comes in the midst of an international crisis and conflict, when access to unbiased news and information, as mandated by the Constitution and by Congress, is crucial.

2.  In the last year, President Donald J. Trump and his appointees have done everything in their power to silence and dismantle Voice of America ("VOA"), an independent,

1

federally funded news outlet required by law to bring unbiased news to the world.  Frustrated in that effort by the courts, the Administration has now taken a different tack: to use its governmental authority to control VOA's substantive output—the *content* of its broadcasts and publications—by suppressing coverage of events that it wishes had not occurred, and, separately, by directing that its own partisan messages be passed off to viewers and listeners as "news."  Censorship and propaganda are two sides of the same coin.  All of this violates the federal statutes that govern VOA, and the Constitution itself; and *all* of this undermines the credibility of the United States in the eyes of the world.

3.     These violations are far from theoretical; they have real-world impacts in real time.  Among other things, the President has launched an undeclared war on the Islamic Republic of Iran, ostensibly with the goal of encouraging opponents of the Iranian regime to rise up in counterrevolution.  The Administration—acting through Defendants Michael Rigas, Kari Lake, and other political appointees at Defendant United States Agency for Global Media ("USAGM"), the federal agency that oversees VOA—has censored the news coming out of Iran: interviews, video footage, and stories about anti-government protests within Iran have been suppressed.  Reporting on certain elements in opposition to the Iranian regime have been banned from VOA's Persian Service, rendering untrustworthy a once-respected source of independent news about Iran.

4.     But the illegal censorship and propaganda does not stop there.  At a time when China, America's largest rival on the world stage, is widely and appropriately criticized for its use of the press as a government mouthpiece, the Administration has aped that totalitarian regime by hijacking VOA and using its Mandarin Service to republish verbatim White House talking points and label them, falsely, as "news."

5.      All of this, along with the other unlawful manipulation of VOA detailed below, is antithetical to the tradition of press freedom that has marked America since its founding.  It violates every principle of good journalism.  And it undermines VOA's ability to earn its audience's trust, which is critical to fulfilling VOA's core mission.  But it is worse even than that: it is in clear violation of statutory law and the First Amendment to the Constitution.

6.      Federal law is clear in its requirements:  The International Broadcasting Act ("IBA"), *see* Pub. L. 103-236, 108 Stat. 432, 434 § 304, requires that VOA provide "accurate, objective, and comprehensive" news coverage that accords with "the highest professional standards of broadcast journalism."  22 U.S.C. § 6202(a)(2), (5).  Likewise, section 6204(b) provides that the Chief Executive Officer of USAGM "shall respect the professional independence and integrity of" VOA and the other USAGM networks.  *Id.* § 6204(b).

7.      At its core, the IBA requires that VOA, which is taxpayer-funded, serve as a free, independent journalistic outlet, and enjoy the same journalistic and editorial freedoms as private news organizations protected by the First Amendment.  To that end, federal law erects a "Statutory Firewall" between VOA's Newsroom and its publishers, the political appointees at USAGM, codified in 22 U.S.C. §§ 6202, 6204(b).  This Firewall is designed to prevent political interference with VOA's independent reporting and editorial judgments.  Freedom of the press, and the highest standards of professional journalism, demand nothing less.

8.      The Defendants are suppressing VOA coverage of hard news events—for example, banning reporting on stories about street demonstrations in Iran.  And they are causing the dissemination of propaganda, turning VOA into a partisan mouthpiece of the Administration—requiring that it publish White House talking points nearly word-for-word, and disseminating images of President Trump in the style of Dear Leader Kim Jong-Il.  Congress

having created an independent news outlet in VOA, and the First Amendment and the Statutory Firewall having been enacted to protect such outlets, the Executive may not interfere with the rights of independent journalists employed there to faithfully report the news, or interfere with the rights of news consumers to access those journalists' objective reporting.

9.      As a result of Defendants' unlawful interference in the VOA Newsroom since March 2025, VOA journalists and editors have been silenced and chilled, and VOA's listeners, viewers, and readers—including other journalists abroad who rely on VOA as a source for their own reporting—have been deprived of the news.  Defendants' curtailment of freedom of the press and their infringement on editorial discretion is ongoing and endemic at VOA under the current Administration.

10.      The Trump Administration's unlawful efforts to close USAGM and VOA altogether have been blocked by this Court's orders in *Widakuswara v. Lake*, No. 1:25-cv-1015-RCL (D.D.C.), *Abramowitz v. Lake*, No.1:25-cv-887-RCL (D.D.C.), and other related cases.  The time is now to end the Administration's unlawful corruption of VOA's Newsroom as well.

11.      If the credibility and journalistic integrity at VOA and the other USAGM networks is to survive, and if the rule of law is to be respected, this Court must act.  It should recognize and protect, as the court did in *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333 (D.D.C. 2020), the rights of journalists and those who assist them to work and produce content free from partisan interference by the Executive Branch.  It must enforce the First Amendment and the Firewall that protects the credibility of American government journalism at this critical moment of international crisis.

**JURISDICTION AND VENUE**

12.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (action to redress deprivation of rights secured by the Constitution of the United States).

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (e)(1).  A substantial part of the events giving rise to the claims herein occurred in this District, and Defendants are officers of the United States sued in their official capacities.

**PARTIES**

14.    **Plaintiff Barry Newhouse** was the Acting Director of the VOA Central News Division in Washington, DC from October 2023 until December 2025.  In addition to overseeing VOA's day-to-day English news coverage, Mr. Newhouse worked with VOA management and senior editors to create agency-wide production processes and editorial standards.  He also served as VOA's senior editor leading weekly news planning meetings with all other USAGM-funded media entities, coordinating coverage of wars, elections, and other international events.  Mr. Newhouse joined VOA as a news writer in 2003 and worked as a reporter and editor in VOA bureaus in Washington, Bangkok, Islamabad, and Kabul.  Mr. Newhouse is a full-time employee of USAGM/VOA, currently on administrative leave.

15.    **Plaintiff Ayesha Tanzeem** is the director of VOA's South & Central Asia ("SCA") Division.  Before she was placed on administrative leave in March 2025, Ms. Tanzeem was leading one of the largest divisions in VOA, overseeing eight language services and running news operations across ten countries in twelve languages.  Under her leadership, the SCA Division produced award-winning work and achieved 2.7 billion annual video views on social media and 300% growth on Instagram.  VOA's brand soared in key regions: in Pakistan, it became a household name and was frequently cited by local media; in Turkey, new affiliate

5

partnerships expanded its reach; and in Afghanistan, despite a Taliban ban, six in ten adult mobile users accessed VOA content, with 94% reporting trust in it.  Before becoming a division director in late 2021, Ms. Tanzeem served as VOA's Islamabad bureau chief and correspondent, leading coverage of Pakistan and Afghanistan.  A seasoned war correspondent, she has often reported in situations that put her life and safety at risk, including from ISIS-controlled areas and from the ground as Afghanistan fell to the Taliban.  Ms. Tanzeem is a full-time employee of USAGM/VOA, currently on administrative leave.

16.     **Plaintiff Dong Hyuk Lee** joined VOA in April 2006 as Chief of the Korean Service with more than twelve years of journalism experience, including two years as managing editor at a Korean newspaper.  Mr. Lee's experience as a reporter and news manager has proved to be an important asset for the service as it just began to embark on a major program enhancement.  Before joining VOA, he worked for three and half years at Radio Free Asia.  As senior editor there, he led a news team producing a daily news program at the Korean Service. As a veteran journalist specializing in the U.S.-North Korea relations, Mr. Lee appeared on U.S. and South Korean news outlets, including Fox Business' "Mornings with Maria" and KBS.  Mr. Lee is a full-time employee of USAGM/VOA, currently on administrative leave.

17.     **Plaintiff Ksenia Turkova** is a journalist who worked for the VOA Russian Service from 2017 to 2025 as a Personal Services Contractor ("PSC").  An award-winning journalist with more than 20 years of experience, Ms. Turkova specializes in the language of media, political rhetoric, and propaganda.  In 2025, the Russian government designated Ms. Turkova a "foreign agent," a label widely used to target and persecute independent journalists and media workers.  In September 2025, USAGM offered Ms. Turkova the opportunity to return to work.  However, she declined the offer because returning under existing management

involved a high likelihood of censorship and a chilling of her First Amendment rights.  She told USAGM she would be willing to consider returning to VOA in the future once full operations were restored.

18.    **Plaintiff PEN America** is an association of writers and other literary and media professionals, including journalists and publishers of news and commentary on public affairs. PEN America's mission is to unite writers and their allies to defend free expression, advance literature, and protect the liberties that enable creators to share ideas worldwide.  Founded in 1922 to combat censorship and support persecuted writers, PEN America's bedrock work is advocacy for individual writers who are censored or punished for the content of their speech. PEN America, among other things, engages in advocacy for freedom of the press, monitors the government's impact on the press, and publishes research and analysis on these issues.  PEN America is a 501(c)(3) organization headquartered in New York City with a traditional voluntary membership structure.  Its members include individuals who work as employees and contractors for VOA, as well as individuals who rely on indispensable information uniquely produced by VOA to support their own reporting, editing, research, and writing.  PEN America brings suit on its own behalf and on behalf of its members.

19.    **Plaintiff Reporters Without Borders, Inc. ("RSF USA")** is the United States affiliate of **Plaintiff Reporters Sans Frontières ("RSF")**, an international non-profit and non-governmental organization that focuses on safeguarding the right to freedom of information. RSF has correspondents around the globe who rely on reporting from USAGM broadcasters, including VOA and USAGM's grantee networks.  RSF USA is a 501(c)(3) non-profit organization headquartered in Washington, D.C. and is the United States affiliate of Plaintiff RSF, which is headquartered in Paris, France.

20.     RSF and RSF USA's mission is to monitor press freedom violations, raising awareness, advocating for policies supporting access to information, exposing bad actors, and mobilizing the public with respect to press freedom issues.  RSF has 130 correspondents who are media workers throughout the world, and RSF USA oversees RSF correspondents who work in English-speaking North America.  RSF and RSF USA's media workers routinely rely on VOA as an indispensable source of information.  RSF and RSF USA bring suit on behalf of themselves and their members.

21.     **Defendant USAGM** is an independent federal agency that supports federally funded broadcast networks, including VOA, the Office of Cuba Broadcasting ("OCB"), Radio Free Asia ("RFA"), Radio Free Europe/Radio Liberty ("RFE/RL"), and the Middle East Broadcasting Network ("MBN").  USAGM is headquartered in the District of Columbia.

22.     **Defendant Michael Rigas** is the Acting Chief Executive Officer of USAGM and is sued in his official capacity.

23.     **Defendant Kari Lake** is a federal employee and is sued in her official capacity. She has been a USAGM employee since in or around February 2025.

## JURY DEMAND

24.     Plaintiffs hereby demand a jury trial as to all matters properly triable by jury.

## FACTUAL ALLEGATIONS

## I.   VOICE OF AMERICA IS AN INDEPENDENT NEWS OUTLET, NOT A PUPPET OR MOUTHPIECE FOR ANY PRESIDENTIAL ADMINISTRATION

25.     By design—and as a matter of federal law—VOA is an independent news outlet. It was established to provide credible, objective news to the world, not to serve as a puppet or mouthpiece of any presidential administration.

8

26.    Government-funded journalism, reporting, and broadcasting have been a central component of the United States' efforts to combat disinformation and propaganda abroad since World War II.  VOA has been central to those efforts for more than 80 years.

27.    Established in 1942 during World War II to provide news and information to German audiences as a counterpoint to Nazi propaganda, VOA quickly expanded to cover Eastern Europe and the Soviet Union during the Cold War, and later to Cuba, Asia, and the Middle East.   For the past eight decades, VOA, along with OCB, RFA, RFE/RL, MBN, and others, has earned an audience of hundreds of millions of listeners, viewers, and readers around the world, especially in countries like Iran, China, and North Korea, where press freedom does not exist.  As of September 30, 2024, the combined networks reached an audience of 427 million.

28.    Critical to VOA's success and credibility is the recognition that "VOA correspondents, [while on the federal payroll] . . . are unique in that *they are working journalists*.  Accordingly, their independent decisions on when and where to cover the news should not be governed by other considerations."  H.R. Conference Report 107–671 (to accompany H.R. 1646), Sept 22, 2002 (emphasis added).  This independence—fundamental to press freedom—is enshrined in federal law via a host of statutory provisions known collectively as the Statutory Firewall.

***VOA's Editorial Independence Is Protected by the Statutory Firewall***

29.    VOA has been a statutorily mandated government function since 1973.  *See* Board for International Broadcasting Act of 1973 ("BIB Act"), Pub. L. No. 93-129, 87 Stat. 456 (1973).

30.    In the BIB Act, and later, in the IBA and the 2017 National Defense Authorization Act (the "NDAA"), PL 114-328, 130 Stat 2000, 2549 § 1288, Congress articulated a policy of press freedom for VOA and established a governing board and parent organization, now known as USAGM, to oversee VOA's operations.

31.    When Congress enacted these policies and structures, it also codified the Statutory Firewall to protect the independence and integrity of VOA's journalists and their reporting. Federal law provides that "United States international broadcasting shall . . . be conducted in accordance with the highest professional standards of broadcast journalism."   22 U.S.C. § 6202(a)(5).   In addition, the law requires that "United States international broadcasting shall include . . . news which is consistently reliable and authoritative, accurate, objective, and comprehensive" and which is "a balanced and comprehensive projection of United States thought and institutions, reflecting the diversity of United States culture and society."  *Id*. § 6202(b)(1)–(2).

32.    In its most recent legislation in this arena, the NDAA, Congress was explicit:  it required that the CEO of USAGM "respect the professional independence and integrity" of its broadcasting services and grantees.   *Id*. § 6204(b).  Specifically, the NDAA provides that "[t]he Secretary of State and the [USAGM] Chief Executive Officer, in carrying out their functions, ***shall respect the professional independence and integrity of the Agency, its broadcasting services [including VOA], and the grantees of the Agency*.**"   *Id*. § 6204(b) (emphasis added); *accord Turner*, 502 F. Supp. 3d at 346.   In his signing statement, then-President Obama described the NDAA as "retaining the longstanding statutory firewall, protecting against interference with and maintaining the professional independence of the agency's journalists and broadcasters and thus their credibility as sources of independent news and information."   *Open*

10

*Tech. Fund v. Pack*, 470 F. Supp. 3d 8, 14 (D.D.C. 2020) (quoting Presidential Statement on Signing the NDAA for Fiscal Year 2017, 2016 DAILY COMP. PRES. Doc. 863, at 3 (Dec. 23, 2016)).

33.    Today, USAGM's website states that "[t]he firewall is critical to ensuring that the editors, reporters, and other journalists make the final decisions on what stories to cover and how they are covered, and that those decisions are ultimately governed by the highest standards of professional journalism, as required by law."[1]  This statement reflects the history of the Statutory Firewall, not its current status under the second Trump Administration.

### The Executive Branch's Antipathy Towards VOA and Defendant Kari Lake's Contempt for the Statutory Firewall

34.    Since the start of the second Trump Administration, the Executive Branch's attitude towards VOA, and the Statutory Firewall in particular, have been marked by antipathy and contempt.  On March 14, 2025, the President issued the Executive Order titled "Continuing the Reduction of the Federal Bureaucracy," which directed USAGM to "reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law."  Exec. Order No. 14,238, § 2(a)(ii), 90 Fed. Reg. 13043 (Mar. 14, 2025) (the "Executive Order").  USAGM was then brought to a standstill.

35.    On March 15, 2025, the White House released an "article" entitled "The Voice of Radical America," listing examples of what the White House called VOA's "leftist bias."[2]  These included claims that VOA "downplay[ed] the validity of the Hunter Biden laptop story" and was

---

[1] *Firewall*, U.S. Agency for Glob. Media, https://www.usagm.gov/who-we-are/firewall/ (last visited Mar. 21, 2026).

[2] *The Voice of Radical America*, The White House (Mar. 15, 2025), https://www.whitehouse.gov/articles/2025/03/the-voice-of-radical-america/.

"too favorable to presumptive Democratic nominee Joe Biden."[3]  It also cited a VOA story about "white privilege and racial profiling" and a "segment about transgender migrants seeking asylum in the United States."[4]

36.     Quickly following suit, in a March 15, 2025 statement published on the USAGM website (the "March 15 Statement"),[5] Defendant Kari Lake, President Trump's handpicked "Senior Advisor to the Voice of America,"[6] condemned VOA's content as "a product that often parrots the talking-points of America's adversaries." [7]  Defendant Lake publicly declared her view that VOA itself is "not salvageable."[8]

37.     Defendant Lake has also expressed her contempt for VOA's editorial independence and the Statutory Firewall.  In public remarks, she has characterized the Firewall not as a legal requirement and a guarantor of credibility for the service, but as an obstacle to direct control of VOA by any presidential administration (which, of course, it is intended to be). She has repeatedly called for its abolition.

38.     On March 17, 2025, Defendant Lake stated that "the particular problem" with VOA "is it's taxpayer funded and there's no oversight over the editorial side of what's going out

---

[3] *Id.*

[4] *Id.*

[5] *USAGM, Senior Advisor Kari Lake cancels obscenely expensive 15-year-lease that burdened the taxpayers and enforces Trump's Executive Order to drastically downsize agency*, U.S. Agency for Glob. Media (Mar. 15, 2025), https://www.usagm.gov/2025/03/15/u-s-agency-for-global-media-complies-with-presidential-executive-order-to-reduce-the-federal-bureaucracy/.

[6] Jessica Jerreat, *USAGM announces Kari Lake as special adviser*, VOA News (Feb. 27, 2025), https://www.voanews.com/a/usagm-announces-kari-lake-as-special-adviser-/7990843.html.

[7] *USAGM, Senior Advisor Kari Lake cancels obscenely expensive 15-year-lease that burdened the taxpayers and enforces Trump's Executive Order to drastically downsize agency*, U.S. Agency for Glob. Media (Mar. 15, 2025), https://www.usagm.gov/2025/03/15/u-s-agency-for-global-media-complies-with-presidential-executive-order-to-reduce-the-federal-bureaucracy/.

[8] *Id.*

over the air.  The agency has tried to put up a . . . border wall around it that says . . . you can't tell us what we say on the airwaves. . . . *That's not how things should operate*."[9]

40. During a hearing before the House Foreign Affairs Committee on June 25, 2025, Defendant Lake went further:  "We need to make sure the [F]irewall is gone.  We should be able to have control over what kind of content goes out.  It should be in alignment with our foreign policy.  And unfortunately, the only people that seem to have any influence are our adversaries on what is going out on VOA's airwaves.  It's outrageous and it has to stop."[10]

40. Similarly, in a public statement on July 22, 2025, Defendant Lake stated:  "With the editorial firewall at Voice of America, they could go completely rogue, and the President couldn't pick up the phone and stop them.  There are no guardrails.  There's no editorial control.  This is a rogue, taxpayer funded agency, and we need to ensure that it's no longer doing damage to America."[11]

## II.    COURT INTERVENTION PREVENTED THE COMPLETE DISMANTLING OF USAGM, BUT STATUTORY AND CONSTITUTIONAL VIOLATIONS PERSIST

41. The Trump Administration's hostility towards the content of VOA and the other networks was its stated reason for seeking to shutter these agencies and fire their entire staff.  But the Administration's efforts to defund and close VOA have been blocked by the actions of this Court.

---

[9] The Kari Lake, *On Monday, I joined Rob Finnerty . . .*, Facebook (Mar. 19, 2025), https://www.facebook.com/TheKariLake/videos/on-monday-i-joined-rob-finnerty-on-newsmax-to-discuss-myefforts-to-reduce-the-s/981078997333874/ (time stamp at 3:06) (emphasis added).

[10] House Foreign Affairs Committee Republicans, *USAGM Senior Advisor Kari Lake Testifies before Congress*, YouTube (Jun. 25, 2025), https://www.youtube.com/watch?v=Be_Ty1K5On8&t=4499s.

[11] Kari Lake (@karilake), Instagram (Jul. 26, 2025), http://www.instagram.com/reel/DMjzEDvBrX3/. The next day, further statements from Lake's interview were posted on X: "I talked to Eric Bolling about what the rescission bill means for taxpayer-funded media and how the editorial firewall at Voice of America prevents the Trump Administration from preventing the agency from being used against American's interests.  @KariLake, X (Jul. 21, 2025, 12:21 AM), https://x.com/KariLake/status/1947149952465113222.

42.     On April 22, 2025, in *Widakuswara v. Lake*, a case brought by journalists and other staff of the Voice of America and its affiliates, the Court preliminarily enjoined the Trump Administration from taking steps to dismantle VOA.  Memorandum Opinion, *Widakuswara*, No. 1:25-cv-1015-RCL, ECF No. 98.  On March 7, 2026, the Court voided all "actions taken by [Defendant Kari] Lake [concerning VOA and other USAGM matters] during her asserted tenure as acting CEO [of USAGM] between July 31 and November 19, 2025," holding that Defendant Lake lacked legal authority to act.  *Widakuswara v. Lake*, No. 1:25-CV-1015-RCL, 2026 WL 638676, at *8 (D.D.C. Mar. 7, 2026).  Ten days later, on March 17, 2026, this Court granted partial summary judgment to the *Widakuswara* plaintiffs, holding that Defendant Lake's conduct in seeking to dismiss the vast majority of VOA's workforce and sharply reduce its output of news to the world was arbitrary, capricious, and unlawful.  Memorandum Opinion, *Widakuswara v. Lake*, No. 1:25-CV-1015-RCL, ECF No. 223.

43.     Despite these rulings, during the entire period of the *Widakuswara* litigation, Defendants have continually breached the Statutory Firewall designed to protect and uphold VOA's mission, as set forth below.

## III.    DEFENDANTS ARE BREACHING THE STATUTORY FIREWALL

44.     Following this Court's March 7 ruling that Defendant Lake lacked legal authority as acting CEO, on March 12, 2025, the White House nominated Sarah B. Rogers, Under Secretary of State for Public Diplomacy, to serve as USAGM CEO.[12]  At the time of the filing of

---

[12] *Nomination and Withdrawals Sent to the Senate*, The White House, (Mar. 12, 2026), https://www.whitehouse.gov/presidential-actions/2026/03/nomination-and-withdrawals-sent-to-the-senate/.

this Complaint, Defendant Michael Rigas, Deputy Secretary of State for Management and Resources, is serving as acting CEO until Rogers's confirmation.[13]

45.    Under Defendant Rigas's authority, Defendant USAGM is actively infringing on VOA's ability to broadcast objective, accurate, and comprehensive reporting, chilling speech in the VOA newsroom, and unlawfully authorizing USAGM political appointees to interfere with VOA's editorial discretion.

46.    As noted above, federal law requires VOA to disseminate consistently "reliable and authoritative, accurate, objective, and comprehensive" coverage of the news, free from political interference and consistent with the highest standards of professional journalism.  22 U.S.C. § 6202(b)(1).

47.    The importance of reliable, accurate, and comprehensive programming from USAGM and its networks is most pronounced during major international conflicts, crises, and regime changes, like the recent Iran War.  The availability of accurate and transparent reporting is not merely a matter of good journalistic practice; it is a fundamental safeguard against propaganda, misinformation, and the manipulation of public understanding during international crises such as these.

48.    In normal times, and consistent with federal statutory mandates, VOA would produce such journalism under the protection of the Statutory Firewall.  The Firewall's very purpose is to protect against even the perception that outlets like VOA are mouthpieces for a particular political perspective or administration; it is crucial to achieving VOA's mission of combatting disinformation, and spreading free speech and independent media to audiences across

---

[13] Ben Johansen, *Judge orders sidelined Voice of America employees back to work*, Politico (Mar. 17, 2026), https://www.politico.com/news/2026/03/17/voice-of-america-back-to-work-00833388.

the globe, which VOA can only accomplish by building trust and credibility with audiences around the world.

49.   Defendant USAGM, through Defendant Lake and under the leadership of Defendant Rigas, has undermined VOA's independence and frustrated VOA's mission and purpose.

50.   Rather than providing a balanced counterpart to propaganda issued by autocratic regimes across the globe, Defendants' actions have sought to convert VOA into a mechanism for *American* propaganda—more specifically, Trump Administration propaganda—which is no better than some of the media outlets in other parts of the world that actively suppress freedom of speech and journalistic integrity.

51.   Specifically, and as set forth below, Defendants have implemented a policy of interference by forcing VOA to suppress actual news events that the Administration does not favor, and to publish repackaged language from White House press releases as "news" articles, all in violation of VOA's mandates to do its work "in accordance with the highest professional standards of broadcast journalism," *id.* § 6202(a)(5), and to broadcast "news which is consistently reliable and authoritative, accurate, objective, and comprehensive," *id*. § 6202(b)(1).

52.   Most dramatically, Defendants' policy of interference has impacted the editorial decisions of VOA's Central Newsroom, and the content of VOA's broadcasting and publication through the Persian and Mandarin services.

53.   Upon information and belief, Defendants' infringement on editorial independence and the suppression of VOA journalists' speech is widespread within VOA.

***Under the Current USAGM Leadership, VOA Central Newsroom Fails to Produce Independent and Balanced News***

54.     In May 2025, following months of inactivity resulting from the Administration's effort to dismantle VOA and its affiliates, including its mass-firings of PSCs and placing nearly all employees on administrative leave, the VOA Central Newsroom was resurrected when a handful of writers and editors were called back from administrative leave. VOA journalists and other staff were directed to publish a limited amount of online video content for VOA's Persian, Pashto, Dari, and Mandarin services and, limited Kurdish and Korean programming has since followed.

55.     Historically, VOA's Central Newsroom deployed reporters into the field—so that they could *report*. Much like reporters at any private broadcasting network, VOA reporters would cover breaking news in real time, conduct interviews with officials and experts across the political spectrum, and consult with assignment editors to produce original multimedia content aimed at providing language service programmers with the broadcast material needed for their target audiences. Language services would then translate that newsroom content and adapt it for their audiences, in addition to producing their own original content.

56.     Today, under the leadership of Defendant Rigas, the Central Newsroom employs a skeleton crew of journalists and editors who rarely if ever leave the VOA headquarters to do their work—and the ensuing "coverage" is deeply impacted. Coverage is limited to roughly five or six short "radio" and "web" stories and one TV piece that often appear to be re-written press releases from the White House or State Department. And what little news *is* published out of the Central Newsroom is far from "comprehensive" or "balanced," not "objective" or "accurate."

57.     For example, stories that VOA would normally cover in detail, like the deadly bombing of a girls' school in Iran on February 28, 2026, are barely mentioned, and

17

uncomfortable facts, like death tolls from U.S. strikes in Iran, are omitted from the coverage altogether. Likewise, perspectives from Members of Congress, world leaders, and the United Nations on major news events are not covered. For example, a recent article titled "President Donald Trump says 'we're not finished yet' as US-Israeli offensive hits Iranian regime 'harder than any country in history'" exclusively quoted President Trump, officials in his administration, official comments from the State Department, and an official from the Israel Defense Forces.[14] Viewpoints from Republican or Democratic lawmakers who may disagree with the White House on policies are virtually absent from VOA newscasts.

***Suppression of News and Unlawful Viewpoint Discrimination at VOA's Persian Service***

58. VOA's Persian-language programming was established in 1979 "to confront[] the disinformation and censorship efforts of the Iranian regime and enhance[] U.S. efforts to speak directly to the Iranian people and the global Persian-speaking diaspora providing the audiences with fact-based information and news, current affairs, cultural and entertaining content."[15]

59. One of Defendant Lake's acts at VOA was to appoint Ali Javanmardi, who had served as a VOA journalist, to oversee VOA's Persian, Kurdish, and Afghan services.

60. Throughout its history, VOA has hired senior journalists as managers and held them accountable to abiding by the VOA Charter. This year, for the first time, under Defendants' leadership USAGM has hired people as *USAGM* employees and then assigned them to run *VOA* editorial units—action that itself violates the Statutory Firewall.

---

[14] On information and belief, the text of this article was posted on the VOA internal Microsoft Teams site to distribute to other news services, which is not available online in English translation.

[15] *VOA Broadcasting to Iran*, InsideVOA, https://www.insidevoa.com/p/6425.html (last visited Mar. 21, 2026).

61.     Javanmardi is employed by USAGM, not VOA—an important distinction because the Firewall is intended to separate VOA's news-gathering, reporting and editorial functions from USAGM employees.  Mr. Javanmardi uses a usagm.gov email address[16] and is identified on VOA Persian Services television programs as "an experienced consultant from the U.S. Agency for Global Media."  He is widely known as loyal to the Trump Administration.  His appointment to oversee the Persian, Kurdish, and Afghan services from his role at USAGM shatters the longstanding prohibition on USAGM controlling VOA editorial content.

62.     As a USAGM employee, Mr. Javanmardi should have no role in directing VOA editorial content.

63.     Mr. Javanmardi's conduct on the Persian Service violates the Statutory Firewall in a variety of ways—the most egregious being suppression and censorship of hard news.

64.     Upon information and belief, Mr. Javanmardi has refused to play audio of protesters in Iran shouting the name of exiled Crown Prince Reza Pahlavi, the son of the late Shah of Iran.[17]  Similarly, under Mr. Javanmardi's management, VOA carried coverage of a street protest against the Islamic Republic that took place in Norway, but muted the audio feed at the moment demonstrators began chanting "Javid Shah," which means "Long live the Shah," referencing the Pahlavi family.[18]  Mr. Javanmardi also refuses to play audio of protesters in Iran shouting the Pahlavi family name.[19]

---

[16] All VOA employees have an @voanews.com email account and a @usagm.gov account.  By convention, VOA employees *always* use their @voanews.com emails for journalism purposes.

[17] Scott Nover, *Voice of America is covering Iran's protests, but not its best-known dissident*, Wash. Post (Feb. 25, 2026), https://www.washingtonpost.com/business/2026/02/25/reza-pahlavi-iran-protests-voa/.

[18] *Iran in Photos*, Facebook, https://www.facebook.com/reel/1402010584984983 (last visited Mar. 21, 2026).

[19] Nover, *supra* note 17.

65.     Similarly, and as further evidence of direct politically motivated suppression of news, upon information and belief, Mr. Javanmardi directed VOA staff *not* to report on a post from Senator Lindsay Graham about meeting with Pahlavi,[20] even though comments from Members of Congress would normally be important parts of coverage of US policy.

66.     On information and belief, Mr. Javanmardi has also banned all mentions of the Pahlavi family or comments in support of the monarchy by guests appearing on the Persian Service.  On January 16, 2026, he sent a note to the whole Persian Service staff that read, "Effective immediately, all guest appearances—including live guests, pre-recorded guests, and guests whose soundbites are used in packages—must be approved by me in advance.  Under no circumstances should a guest be contacted, booked, or confirmed without my explicit approval."

67.     Upon information and belief, Mr. Javanmardi has told VOA staff that they may not report on opposition movements outside of Iran.  However, even as he goes on air himself to talk about events organized by the People's Mojahedin Organization of Iran, an Iranian dissident organization that the United States once listed as a Foreign Terrorist Organization,[21] has since formed political ties with—and has heavily lobbied—the Trump administration.[22]

68.     On information and belief, Mr. Javanmardi also determines the daily topic for VOA anchors to discuss and parrots the Trump Administration's position on daily events.  On information and belief, he has directed VOA Persian Service employees to cover the White House, Department of State, Department of War, Department of the Treasury, and Congress

---

[20] Lindsey Graham (@LindseyGrahamSC) X (Jan. 14, 2026, 4:58 PM), https://x.com/lindseygrahamsc/status/2011558652159934673?s=46&t=3XdxI7So1Vgd6F-qtY0pNQ.

[21] Jonathan Masters, *Mujahadeen-e-Khalq (MEK)*, Council on Foreign Rels. (Jul. 18, 2014), https://www.cfr.org/backgrounders/mujahadeen-e-khalq-mek.

[22] Caitlin Oprysko & Daniel Barnes, *The Iranian exile group that played Washington for this moment*, Politico (Mar. 3, 2026), https://www.politico.com/news/2026/03/03/the-iranian-exile-group-that-played-washington-for-this-moment-00808052.

based on what the Administration has said publicly or posted on social media, without any effort to challenge or balance these perspectives.

69.    At least one journalist with VOA's Persian Service ("VOA Journalist #1") confronted Mr. Javanmardi about censorship of news relating to the Pahlavi family.[23]  Mr. Javanmardi reportedly blocked interviews VOA Journalist #1 conducted with Iranians if the interviewees discussed their support for Pahlavi.[24]  VOA terminated VOA Journalist #1's contract in early March 2026 without explanation, days after he had complained to Mr. Javanmardi about censorship.  VOA Journalist #1 has since publicly stated that he believes that his termination was an effort to limit coverage of Pahlavi.[25]

70.    The absence of a credible, reliable, accurate, and comprehensive VOA Persian Service is acutely felt at this time of war and discontent within Iran.  Iranian government authorities have repeatedly cut off internet access to the Iranian people, to keep them from hearing the truth.  The fact that the Persian Service is no longer committed to the truth leaves the United States at a grave disadvantage in the war of information with Iran.

### Kari Lake Eschews Objectivity and Declares that VOA Must Act as a Mouthpiece for the Trump Administration with Respect to Coverage of the Iran War

71.    The suppression of hard news events and commentary on the Persian Service has set the stage for a broader violation of the Statutory Firewall at VOA that began to unfold in late February 2026, in the runup to the war in Iran.

72.    In late February, as war was Iran was looming, Defendant Lake openly declared that VOA would now act as a mouthpiece for the Trump Administration.  In a February 22, 2026

---

[23] *Id.*

[24] *Id.*

[25] Laura Kelly, *VOA Persian journalist says he was fired over coverage of Reza Pahlavi*, The Hill (Mar. 6, 2026), https://thehill.com/policy/international/5772307-voa-persian-service-censorship-claims/amp/.

interview, Defendant Lake described VOA's and its affiliates role as: "We want to be making sure we're putting news out that falls within the parameters of what our national security strategy is and our foreign policy strategy, and tell America's story."[26] She added, "What we're doing right now is we're getting the President's message out."[27]

73.    Defendant Lake contrasted this approach with past VOA coverage, and specifically linked VOA's suppression of news about the Pahlavi family to political decisions being made by the Administration: "Before, there was a way that the media, that VOA, was putting news out that was very much pro one opposition leader [in Iran].  It was the monarchist . . . We've decided to not do that.  That's not the policy of America.  The policy of America is not to choose the next leader of Iran."[28]

74.    The Administration's use of VOA as its own public relations booster for the war takes many forms.  On February 28, 2026, USAGM announced that "Voice of America is *carrying President Trump's message* about Operation Epic Fury across all language services" (emphasis added).[29]

75.    And so-called "news" articles published by VOA now reflect the Trump Administration's editorial takeover of Iran coverage.  For example, a recent article entitled "President Trump says US making 'tremendous progress' in joint offensive with Israel against Iranian regime, whose leaders are 'rapidly' disappearing," quotes only President Trump, White House Press Secretary Karoline Leavitt, Defense Secretary Pete Hegseth, and Joint Chiefs of

---

[26] Jordan Conradson, *EXCLUSIVE INTERVIEW: Kari Lake is Breaking Through Regime Censorship, Delivering President Trump's Message with USAGM*, Gateway Pundit (Feb. 22, 2026), https://www.thegatewaypundit.com/2026/02/exclusive-interview-kari-lake-is-breaking-through-regime/.

[27] *Id.*

[28] *Id.*

[29] U.S. Agency for Global Media (@USAGM), X (Feb. 28, 2026, 8:34 AM), https://x.com/USAGM/status/202773921985141776.

Staff Chairman General Dan Cain.  It offers no other information, reporting, or analysis.[30]  No "balance" or alternative perspectives are offered.

76.    Similarly, a March 16, 2026, VOA Kurdish article entitled, "Trump: What We Are Doing in Iran Should Have Been Done Years Ago," republished lengthy, verbatim passages from a speech by President Trump.  The only context or commentary offered beyond quotes and paraphrases of the President was:  "This speech comes at a time when the US and Israel's war against the Iranian regime continues and there are global concerns over oil and military supplies."[31]

77.    Defendant Lake's editorial interference is not limited to VOA.  Under her leadership, USAGM has also interfered in content decisions at VOA's affiliated grantee networks.  Defendant Lake publicly admitted that she was refusing transmission services to USAGM grantees RFE and RL until they change their Persian-language content to align with her editorial preferences.[32]

### Defendants' Unlawful Viewpoint Discrimination in the Mandarin Service

78.    Historically, VOA's Mandarin service has had one of the largest audiences of any USAGM language news service.  As of July 2024, before the start of the second Trump Administration, it was broadcasting 70.5 hours per week of TV programming via satellite, 56

---

[30] Michael Lipin, *President Trump says US making 'tremendous progress' in joint offensive with Israel against Iranian regime, whose leaders are 'rapidly' disappearing*, LinkedIn (Mar. 4, 2026), https://www.linkedin.com/pulse/president-trump-says-us-making-tremendous-progress-joint-lipin-kwfye/.

[31] *Trump: Tiştê Em li Îranê Dikin Pêwîst bû Gelek Salan Berê Bibaya* (*Trump: What We Are Doing in Iran Should Have Been Done Years Ago*), VOA Kurdish (Mar. 16, 2026), https://www.dengeamerika.com/a/us-trump-iran/8126678.html.

[32] Kari Lake (@KariLake), X (Jan. 13, 2026, 8:32 PM), https://x.com/karilake/status/201124993145915607.

hours per radio, and 10 hours online, and reached a weekly audience of 33 million people. Today, its output and audience are sharply reduced.

79.    In January 2026, Defendant Lake appointed Hui Jing, a former VOA Mandarin Service contractor and, more recently, a journalist with the Epoch Times, to run the Mandarin service.

80.    On information and belief, Hui Jing works for USAGM, not VOA, and should have no role in directing VOA editorial content.

81.    On information and belief, Ms. Jing has told staff during in-person meetings that if they show loyalty to the Trump Administration, they will keep their jobs at VOA.

82.    On information and belief, Ms. Jing also authorized the publication of what can only be described as pro-Trump propaganda.  On January 7, 2026, VOA published a "news" article through its Chinese service, which the article's author then reposted in English.[33]

83.    The article, titled "Trump combined dealmaking skill with 'peace through strength' diplomacy to mitigate eight conflicts around the world in 2025" (the "Dealmaking Article"), prominently features the following AI-generated image of President Trump superimposed in front of the American flag and a world map:

---

[33] Michael Lipin, *Trump combined dealmaking skill with 'peace through strength' diplomacy to mitigate eight conflicts around the world in 2025*, LinkedIn (Jan. 7, 2026), https://www.linkedin.com/pulse/trump-combined-dealmaking-skill-peace-through-strength-michael-lipin-an8ie/; Michael Lipin, *年终报道：特朗普将谈判技巧与"通过实力实现和平"的外交策略相结合，在2025年平息全球八场冲突*(*Trump combined dealmaking skill with 'peace through strength' diplomacy to mitigate eight conflicts around the world in 2025*), VOA (Jan. 7, 2026), https://www.voachinese.com/a/trump-combined-dealmaking-skill-with-peace-through-strength-diplomacy-to-mitigate-eight-conflicts-around-the-world-in-2025-20260106/8099453.html.

24



84.    The Dealmaking Article bears no resemblance to the high-quality, objective journalism VOA had produced without interruption for over 80 years.  It has all the hallmarks of a White House press release or a partisan puff piece—and imagery worthy of North Korean propaganda.

85.    The article boasts that "President Donald Trump combined his *dealmaking ability* with diplomacy based on the concept of 'peace through strength' to secure agreements halting and restraining eight global conflicts in 2025 after taking office for the second time on January 20."[34]  It notes that President Trump's "diplomatic approach" is "built on his *dealmaking success* with the 2022 Abraham Accords of his first term," and highlights President Trump's "December 17 televised national address looking back at his *year of accomplishments*." [35]  And it concludes by touting "Trump's peacemaking efforts in 2025 led to the governments of Israel, Armenia, Azerbaijan, Cambodia and Pakistan nominating him for the Nobel Peace Prize."[36]

---

[34] *Id*.
[35] *Id*.

[36] *Id*.

86.    The specific language used in the "Dealmaking" Article mimics White House communications regarding President Trump's 2025 foreign policy record, and even uses the exact same fawning phrase—"*dealmaking ability*"—that the White House regularly deploys in official press releases to praise President Trump.

87.    For example, in a February 12, 2025 press release regarding the release of an American hostage held in Gaza, White House Press Secretary Karoline Leavitt stated:  "It speaks to President Trump's *dealmaking ability*."[37]  The same exact phrase appears in a November 5, 2025 White House press release titled "Promises Made, Promises Kept – One Year Later," which describes President Trump "leveraging his *dealmaking ability* to achieve unprecedented peace in eight conflicts throughout the world."[38]

88.    Again, the White House used the phrase in an October 27, 2025 press release touting President Trump's "bold display of strength and unmatched *dealmaking ability*."[39]

89.    Likewise, the White House's 2025 National Security Strategy, a political document published in November 2025, similarly announces that President Trump achieved "remarkable success" and "leveraged his *dealmaking ability* to secure unprecedented peace in eight conflicts throughout the world over the course of just eight months of his second term."[40]

---

[37] *President Donald J. Trump Secures Release of Another American Held Hostage*, The White House, (Feb. 12, 2025), https://www.whitehouse.gov/articles/2025/02/president-donald-j-trump-secures-release-of-another-american-held-hostage/.

[38] ✅ *Promises Made, Promises Kept — One Year Later*, The White House (Nov. 5, 2025), https://www.whitehouse.gov/articles/2025/11/promises-made-promises-kept-one-year-later/.

[39] *President Trump Opens Asia Trip by Securing Landmark Wins for America*, The White House (Oct. 27, 2025), https://www.whitehouse.gov/articles/2025/10/president-trump-opens-asia-trip-by-securing-landmark-wins-for-america/.

[40] *National Security Strategy of the United States of America*, The White House (Nov. 2025), at 8, https://www.whitehouse.gov/wp-content/uploads/2025/12/2025-National-Security-Strategy.pdf.

90.    VOA's regurgitation of the White House's specific talking points in its Mandarin Service news coverage is direct evidence of the political takeover at VOA.

## IV.    DEFENDANTS' FIREWALL VIOLATIONS HAVE INJURED PLAINTIFFS

91.    Defendants' violations of the Statutory Firewall injure Plaintiffs Newhouse, Tanzeem, Lee, and Turkova (the "VOA Journalist Plaintiffs") as well as the press freedom organizational Plaintiffs.

### *The VOA Journalist Plaintiffs Are Silenced and Their Journalistic Freedom Is Curtailed*

92.    Defendants' conduct directly harms the "VOA Journalist Plaintiffs" by depriving them of the ability to engage in independent, professional news-gathering and reporting of the news, or to author and disseminate editorial works of opinion, criticism, and human interest as part of their work at VOA based on the content and perceived viewpoint of their reporting; by interfering with their exercise of editorial control; and by chilling any future reporting they may publish for VOA, in derogation of their rights under the First Amendment and other provisions of law.

93.    Each of the VOA Journalist Plaintiffs has worked for decades to support and build the journalistic efforts at VOA and the other USAGM entities, and take pride in their journalistic independence and integrity, which is now threatened by Defendants' infringement of the First Amendment and overreach into editorial content.

94.    As a result of Defendants' actions, VOA's capacity and ability to broadcast accurate, objective, and reliable journalism has been severely hampered.  Hiring qualified journalists will be more difficult.  Reporting will be more difficult.  Indeed, many of the Agency's most qualified and dedicated civil servants have left voluntarily.  And the impact on the VOA Journalist Plaintiffs is direct and dramatic.  VOA's journalists who remain, including Plaintiffs Newhouse, Tanzeem, and Lee, face serious and personal risks to their future—and for

some foreign correspondents, their safety—and are unquestionably chilled in their news coverage.  This is the very type of irreparable harm that the First Amendment and the Statutory Firewall are meant to protect against.

***Defendants' Conduct Violates Plaintiffs' Right to Receive Information***

95.    Defendants' conduct impairs the work of Plaintiff PEN America.  The infringement on VOA's capacity to broadcast objective, accurate, and comprehensive reporting frustrates PEN Americas's core mission of defending persecuted writers, fighting censorship, and combating press freedom concerns worldwide.  It deprives PEN America of a critical flow of information from areas where information is tightly controlled, damaging PEN America's ability to identify and call out ongoing persecution and censorship.

96.    Defendants' conduct also injures PEN America's members.  It deprives those members working for VOA of their ability to gather and report news, to author and disseminate editorial works of opinion, criticism, and human interest, and to exercise editorial control over their publications, and it chills their future reporting for VOA.  Defendants' conduct injures PEN America members more generally by depriving them of trustworthy news and information they have consistently relied upon from regions where VOA is an indispensable source of independent and accurate news.  It prevents PEN America's members from relying upon and disseminating information provided by VOA and prevents the public from receiving this vital information.

97.    Defendants' conduct impairs the work of Plaintiffs RSF and RSF USA and the organizations' ability to advocate for a free press; injuring correspondents by depriving them of a trustworthy news and information in countries where VOA is one of the few, if not the only, sources of independent and reliable news; stopping them from disseminating vital information;

28

reducing the opportunities for persecuted correspondents' stories to be highlighted and potentially protected; and preventing the public from receiving valuable information they have consistently relied upon, which at times can be a matter of life and death.

98.     The infringement on VOA's ability to broadcast objective, accurate, comprehensive reporting weakens Plaintiffs RSF and RSF USA's ability to amplify press freedom concerns throughout the world.  VOA is perhaps the only American media outlet with a dedicated "press freedom desk" that regularly investigates and covers stories concerning press freedom in the United States and around the world.  VOA frequently covers RSF and RSF USA's reports and advocacy efforts, ensuring that threats to journalists and media independence receive international attention.

## FIRST CAUSE OF ACTION
### Violation of the First Amendment
### (Viewpoint Discrimination and Chilling of Free Speech and Freedom of the Press)

99.     Plaintiffs repeat, reallege, and incorporate the allegations in the paragraphs above as though fully set forth herein.

100.     Both the Press Clause and Speech Clause of the First Amendment protect VOA journalists engaged in gathering and reporting the news. U.S. Const. amend. I.

101.     Defendants' conduct violates the First Amendment rights of the VOA Journalist Plaintiffs by, among other things: (a) restricting speech based on viewpoint; (b) interfering with the editorial discretion of journalists; and (c) chilling rights protected by the First Amendment's guarantees of the freedoms of speech and press.

102.     Any restrictions on the First Amendment rights of the VOA Journalist Plaintiffs must be viewpoint-neutral and reasonable given VOA's mission of pursuing and producing

29

objective journalism.  As alleged herein, Defendants' restrictions are presumptively unlawful and not justified by any compelling governmental interest.

103.    Defendants have regulated speech based on content by censoring reporting on certain stories and topics, chilling coverage of news they considered unhelpful to the Trump Administration, and restricting the expression of opinions critical of the Trump Administration.

104.    Defendants have engaged in a pervasive practice and policy of discriminating against any viewpoint that deviates from or does not align with the Trump Administration,

105.    Defendants have interfered with the editorial discretion of journalists by preventing the USAGM networks' journalists from making independent decisions about what news to cover and how to cover it.  Defendants took these actions in order to limit or suppress speech on disfavored topics and punish speech critical of the Trump Administration.

106.    Defendants have intentionally chilled the exercise of rights protected by the First Amendment by interfering with the content of the VOA Journalist Plaintiffs' news coverage, ceasing operations, forbidding individuals to work, and undermining the efficiency of their organizations.  Defendants took these actions to limit and suppress speech on disfavored topics and punish speech critical of the Trump Administration.

107.    Defendants perceive USAGM journalists and staff members, including the VOA Journalist Plaintiffs, to be "leftist," anti-Trump, and members of the "deep state."  Defendants' actions to limit speech on disfavored topics and punish speech critical of the Trump Administration are presumptively unconstitutional, and Defendants can offer no compelling rationale to justify it.

30

108.    Defendants' actions violate the First Amendment rights of the VOA Journalist Plaintiffs, other USAGM journalists, and their colleagues who facilitate the dissemination of news and opinion.

109.    Defendants' unconstitutional viewpoint discrimination has chilled and suppressed the speech of the VOA Journalist Plaintiffs and will continue to do so.

110.    Plaintiffs have suffered and will continue to suffer irreparable harm from Defendants' violation of their constitutional rights to freedom of expression and the freedom of press unless and until Defendants' conduct is enjoined.

## SECOND CAUSE OF ACTION
### Violation of the First Amendment
### (Violation of the Right to Receive Information)

111.    Plaintiffs repeat, reallege, and incorporate the allegations in the paragraphs above as though fully set forth herein.

112.    The First Amendment protects the right to receive information and ideas.  It prohibits the government from arbitrarily or vindictively limiting the stock of information from which members of the public may draw.  The public, including Plaintiffs PEN America, RSF, RSF USA, and their members, has a right to receive information from the press without undue government interference.

113.    The First Amendment is violated where a listener has a concrete, specific connection to a speaker whose message is curtailed by government action.

114.    Until Defendants' unconstitutional actions, USAGM's networks, including VOA, had provided information and published trusted reporting for more than 80 years, as required by statute.

31

115. Plaintiffs PEN America, RSF, RSF USA, and their members rely on reporting from USAGM networks, including VOA, as a consistent, critical flow of information around the world.

116. Defendants' actions therefore violate Plaintiffs PEN America, RSF, RSF USA, and their members' First Amendment right to receive information from USAGM's networks, including VOA.

117. Defendants' actions are subject to strict scrutiny.

118. No legitimate compelling government interest justifies Defendants' actions, and the actions taken are not the least restrictive means of achieving any legitimate governmental objective.

119. As a result of Defendants' unconstitutional actions, Plaintiffs PEN America, RSF, RSF USA, and their members have suffered and continue to suffer irreparable harm, which warrants this Court's intervention and injunctive relief.

### THIRD CAUSE OF ACTION
**Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)**
**(Defendants' Firewall Breaches Are Arbitrary, Capricious, Unconstitutional,**
**or Otherwise Not in Accordance with Law)**

120. Plaintiffs repeat, reallege, and incorporate the allegations in the paragraphs above as though fully set forth herein.

121. Individually and collectively, Defendants' numerous Firewall violations constitute "final agency action[s] for which there is no other adequate remedy."   5 U.S.C. § 704.

122. Defendant USAGM is an agency subject to the Administrative Procedure Act ("APA"). *Id.* § 701; 22 U.S.C. § 6203.

123. Under the APA, this Court is empowered to "hold unlawful and set aside agency action, findings, and conclusions found to be": (1) "arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law"; (2) "contrary to constitutional right, power, privilege, or immunity"; (3) "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"; or (4) "without observance of procedure required by law."   5 U.S.C. § 706(2).

124.    Defendants' breaches of the Statutory Firewall are "contrary to constitutional right, power, privilege, or immunity."   *Id.* § 706(2)(B).   Defendants' conduct also infringes upon the First Amendment right to freedom of the press and the right to engage in protected First Amendment activity, and is unconstitutional retaliation and unconstitutional discrimination based on perceived viewpoint.   Defendants' actions—including their perceived-viewpoint discrimination—are presumptively unconstitutional, and because Defendants have no legal or rational justification for their misconduct, that conduct is unconstitutional and thus violates the APA.

125.    Defendants' conduct is also "not in accordance with law," and is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."   *Id.* § 706(2)(A), (2)(C).   Defendants' conduct violates the Statutory Firewall, which exists to protect the USAGM journalists' professional independence and integrity and to enable them to operate within the highest professional standards of broadcast journalism.   *See* 22 U.S.C. §§ 6202, 6204(b).   Defendants' conduct violates the Statutory Firewall in that it seeks to strangle the networks and coerce them into submission and because it violates the statutory take care clause, which requires that Defendants "respect the professional independence and integrity of the Agency, its broadcasting services, and the grantees of the Agency."   *Id.* § 6204(b).

126.    Defendants' breaches of the Statutory Firewall are also "arbitrary and capricious." 5 U.S.C. § 706(2)(A).   Defendants' conduct is substantively unreasonable and they have offered no legitimate rationale for it.   Additionally, they have failed to consider the interests and mission

33

of USAGM, the networks, and their employees.   To date, Defendants' expressed rationales for their misdeeds have been either facially discriminatory or pretextual and unsupported by substantial evidence, and do not render lawful support for Defendants' unlawful conduct.

127.    Defendants' misconduct risks the reputation and credibility of the VOA Journalists and all USAGM employees and networks, harming journalists, chilling protected journalistic activity, and limiting all stakeholders' and journalists' futures.   Defendants' conduct has resulted in the silencing of important news stories and perspectives and infringing on editorial discretion.  It violates the APA and should be set aside under 5 U.S.C. § 706(2).

### FOURTH CAUSE OF ACTION
**Declaratory Judgment Act**
**(28 U.S.C. §§ 2201, 2202)**

128.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

129.    Plaintiffs are each entitled to declaratory relief on the basis of all claims identified.  There is a substantial and ongoing controversy between Plaintiffs and Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that the Defendants do not have the right to censor VOA and use the VOA Journalist Plaintiffs to disseminate propaganda.

### FIFTH CAUSE OF ACTION
**Mandamus Act (28 U.S.C. § 1361); All Writs Act (28 U.S.C. § 1651)**

130.    Plaintiffs repeat, reallege, and incorporate the allegations in the paragraphs above as though fully set forth herein.

131.    The Mandamus Act, 28 U.S.C. § 1361, vests this Court with original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

132.    The All Writs Act, 28 U.S.C. § 1651, authorizes this Court to issue all writs "necessary or appropriate" in aid of its jurisdiction.

133.    USAGM has a non-discretionary duty to perform various statutory functions, including:

    a.    22 U.S.C. § 6202(c), which requires Voice of America to "serve as a consistently reliable and authoritative source of news [that is] accurate, objective, and comprehensive."

    b.    22 U.S.C. § 6202(a), (b), which requires U.S. international broadcasting to "be designed so as to effectively reach a significant audience," and include "news which is consistently reliable and authoritative, accurate, objective, and comprehensive," among other things.

134.    USAGM is not currently performing these statutorily mandated functions.

135.    It is necessary and appropriate for this Court to issue a writ of mandamus pursuant to 28 U.S.C. §§ 1361 and 1651 and under this Court's equitable authority to compel Defendants to act in accordance with their statutory functions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter each of the following forms of relief:

    a.    A permanent injunction that:

        i.    Enjoins Defendants from violating Plaintiffs' First Amendment right to be free from viewpoint discrimination;

        ii.    Enjoins Defendants from violating Plaintiffs' First Amendment right to receive information; and

        iii.    Enjoins Defendants from violating the Statutory Firewall;

35

b.        A declaration that Defendants' conduct alleged herein violates the First Amendment;

c.        A declaration that Defendants' conduct alleged herein violates the Statutory Firewall and the Administrative Procedure Act;

d.        Order Defendants to comply with Congressional statutes that require VOA to "serve as a consistently reliable and authoritative source of news," 22 U.S.C. § 6202(c), and require international USAGM outlets to provide "news which is consistently reliable and authoritative, accurate, objective, and comprehensive," *Id.* § 6202(a), (b) (and, similarly, 22 U.S.C. § 1465aa), including by enjoining Defendants, and those acting in concert with them, from taking any steps that would cause USAGM or its outlets to be unable to effectively disseminate news and opinion that is "accurate, objective, and comprehensive."

e.        Award Plaintiffs nominal damages;

f.        Award Plaintiffs reasonable attorneys' fees and costs; and

g.        Grant such other relief as this Court deems just and proper.

36

Dated:        March 23, 2026

GOVERNMENT ACCOUNTABILITY
PROJECT

  /s/  David Z. Seide
David Z. Seide (D.C. Bar # 421899)

1612 K Street, NW
Washington, DC 20006
(202) 457-0034
davids@whistleblower.org


DEMOCRACY DEFENDERS FUND

   /s/  Norman L. Eisen
Norman L. Eisen (D.C. Bar # 435051)
Taryn Wilgus Null (D.C. Bar # 985724)
Lindsay W. Zimliki (D.C. Bar # 475890)
Zsa'Queria Martin*

600 Pennsylvania Avenue SE #15180
Washington, DC 20003
norman@democracydefenders.org
taryn@democracydefenders.org
lindsay@democracydefenders.org
zsaqueria@democracydefenders.org

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

  /s/   Daniel M. Eisenberg
Andrew G. Celli, Jr.*
Nick Bourland*
Daniel M. Eisenberg (D.C. Bar # 90017823)
Rachael Wyant*

One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000
acelli@ecbawm.com
nbourland@ecbawm.com
deisenberg@ecbawm.com
rwyant@ecbawm.com


MEDIA FREEDOM & INFORMATION
ACCESS CLINIC - YALE LAW SCHOOL

   /s/ David Schulz
David Schulz (D.C. Bar # 459197)

127 Wall Street
New Haven, CT 06520
david.schulz@ylsclinics.org

*Counsel for Plaintiffs*

**Pro hac vice** application forthcoming

37