**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| BARRY NEWHOUSE, et al. |
| *Plaintiffs*, |
| -*against*- |
| U.S. AGENCY FOR GLOBAL MEDIA, et al. |
| *Defendants*. |

Case No. 26-cv-00980-RCL

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
OBJECTION TO PLAINTIFFS' NOTICE OF RELATED CASE**

The Court should overrule Defendants' objection to Plaintiffs' Notice of Related Case because this is a textbook case of "the interest of judicial economy" being served by the related case rule. *See Singh v. McConville*, 187 F. Supp. 3d 152, 155 (D.D.C. 2016) (citations omitted).

In their objection, Defendants misapply Local Civil Rule 40.5(a)(3), which provides that a later-filed case is related to an earlier case still pending if the two cases "grow out of the same event or transaction." Defendants' position is essentially that because the claims in this case are not identical to those in *Widakuswara v. Lake*, No. 25-cv-01015-RCL (D.D.C.), they are not related. On the contrary, because both cases stem from the Trump administration's attempt to destroy Voice of America ("VOA") as it has existed for decades and to remake it to serve the Trump administration, the two cases have overlapping parties and claims, and both have deeply intertwined facts, judicial economy is best served by this Court hearing both cases.

## BACKGROUND

***Among Other Things, the* Widakuswara *Suit Challenges the Government's Attempts to Prevent VOA's Independent Reporting***

*Widakuswara* was filed in March 2025, immediately after the Trump administration prevented VOA from fulfilling its statutorily mandated functions by attempting to essentially shut the agency down. That case challenges the federal government's attempt to remove VOA staff from their jobs, illegally install an agency head without congressional approval, and prevent VOA from independently covering and reporting on the news. *Widakuswara*, ECF No. 1, ¶¶ 102-60; ECF No. 167-1, ¶¶ 27-42. The first paragraph of the *Widakuswara* Complaint explains that the Trump administration

> halted VOA's iconic journalism by ordering virtually the entire staff not to report to work, turning off the service, and locking the agency's doors. It has done so because it perceives VOA's journalistic output to be inconsistent with this Administration's favored viewpoint and political agenda. And it has done so in direct violation of laws concerning the governance of VOA and its parent agency the United States Agency for Global Media ("USAGM"), which ensure the ongoing availability of VOA and protect journalists from Executive Branch overreach, and the First Amendment.

*Widakuswara*, ECF No. 1, ¶ 1.

The *Widakuswara* Complaint laid out President Trump's longstanding opposition to the viewpoint of VOA's reporting, noting that:

> President Trump demonstrated his animus towards USAGM in his first term. In April 2020, the President called VOA "the Voice of the Soviet Union." He asserted that VOA was saying "disgusting [things] toward our country," and was "parroting Chinese talking points during its coronavirus coverage." The White House later issued a statement that "VOA too often speaks for America's adversaries—not its citizens. Journalists should report the facts, but VOA has instead amplified Beijing's propaganda." President Trump accused VOA of "spend[ing America's] money to promote foreign propaganda" "amid a pandemic." He called VOA a "DISGRACE" and accused it of peddling Chinese and Iranian "propaganda."

*Id.* ¶ 55. Indeed,

> In June 2020, the First Trump Administration began to aggressively assert control over USAGM. The Administration's goal was to fundamentally remake USAGM into the Administration's public relations outlet. To accomplish this, the First Trump Administration breached the statutory firewall, attempted to cow journalists into submission, and sought to chill any expressive conduct that they deemed out of lockstep with the administration.

*Id.* ¶ 56. Those efforts were halted only after VOA journalists brought a lawsuit against USAGM and obtained a 2020 preliminary injunction barring "USAGM officials from taking certain actions in derogation of USAGM journalists' rights." *Id.* (citing *Turner v. U.S. Agency for Global Media*, 502 F. Supp. 3d 333 (D.D.C. 2020)).

The *Widakuswara* Complaint also explains that President Trump's animus against VOA continued after his 2024 re-election, notably with Executive Order 14238, which "provides that USAGM and six other federal entities 'shall be eliminated to the maximum extent consistent with applicable law, and such entities shall reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law.'" *Id.* ¶ 69 (citing Exec. Order No. 14238, 90 Fed. Reg. 13043 (Mar. 14, 2025) § 2(a)). Issued simultaneously with this Executive Order was a White House press release titled "The Voice of Radical America," which asserted that "President Donald J. Trump's executive order on Friday will ensure that taxpayers are no longer on the hook for radical propaganda," and cited examples of "leftist bias" in VOA's journalism. *Id.* ¶¶ 70-73.

The *Widakuswara* litigation has resulted in numerous orders blocking agency action—initially a temporary restraining order, *see Widakuswara*, ECF No. 54, then a preliminary injunction, *see Widakuswara*, ECF No. 99, and later grants of partial summary judgment on the Appointments Clause and Federal Vacancies Reform Act Claims, *see Widakuswara*, ECF No. 218, and Administrative Procedure Act ("APA") claims, *see Widakuswara*, ECF No. 222. Some

of these orders have been stayed pending appeal, *see Widakuswara v. Lake*, No. 25-5144 (D.C. Cir. Mar. 31, 2026), ECF No. 2166451; *id.* (May 1, 2025), ECF No. 1208735658.

***This Case Also Challenges the Government's Ongoing Efforts to Prevent VOA from Independently Reporting the News***

The instant case, filed in March 2026, challenges subsequent governmental action in 2025 and early 2026 that prevents VOA journalists from independently reporting on the news. ECF No. 1, ¶¶ 99-135. The Complaint explains that this lawsuit addresses illegal government action that took place after the *Widakuswara* Court thwarted the Trump administration's initial effort to silence VOA:

> In the last year, President Donald J. Trump and his appointees have done everything in their power to silence and dismantle Voice of America ("VOA"), an independent, federally funded news outlet required by law to bring unbiased news to the world. Frustrated in that effort by the courts, the Administration has now taken a different tack: to use its governmental authority to control VOA's substantive output—the *content* of its broadcasts and publications—by suppressing coverage of events that it wishes had not occurred, and, separately, by directing that its own partisan messages be passed off to viewers and listeners as "news." Censorship and propaganda are two sides of the same coin.

*Id.* ¶ 2. The Complaint details President Trump's and Defendant Lake's animus toward VOA since the beginning of the second Trump administration in early 2025, *see id.* ¶¶ 34-40, and details the relevant *Widakuswara* rulings that have blocked the government's efforts to gut VOA, *id.* ¶¶ 41-42.

There are overlapping parties and counsel in the two cases. Reporters Without Borders and Reporters Sans Frontieres are Plaintiffs in both cases, Kari Lake and USAGM are Defendants in both cases, and nearly all counsel to Plaintiffs in this case also serve as counsel to the *Widakuswara* Plaintiffs. Defendants acknowledge that both cases involve claims under the First Amendment, the APA, the Declaratory Judgment Act, and the Mandamus Act. ECF No. 23 at 2-3.

## ARGUMENT

**I.    This Case and *Widakuswara* Are Related Pursuant to Local Civil Rule 40.5(a)(3) Because They Arise Out of the Same Event or Transaction.**

This case and *Widakuswara* are related because both grew out of the same event or transaction: the Trump administration's illegal attempt to take over VOA.

"Civil cases are 'related when the earliest is still pending on the merits in the District Court and they . . . grow out of the same event or transaction[.]'" *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Trump*, No. CV 25-2445 (PLF), 2025 WL 2301989, at *3 (D.D.C. Aug. 11, 2025) (internal citations and quotation marks omitted). "The related case rule 'rests primarily on considerations of judicial economy' and aims to prevent the inefficiency inherent in having two judges 'handling cases that are so related that they involve common factual issues or grow out of the same event or transaction.'" *DSCC v. Trump*, No. CV 26-1114 (CKK), 2026 WL 1012587, at *2 (D.D.C. Apr. 8, 2026) (internal citations omitted).

Both this case and *Widakuswara* arose from the same ongoing event—the Trump administration's effort to interfere with the independent journalism VOA has produced continuously since the Second World War, solely because the administration disagrees with VOA's editorial perspective and reporting.

In *Widakuswara*, journalists employed by VOA or one of its sister networks, along with the unions that represent them, challenged the defendants' closure of VOA's parent agency, USAGM, firing of staff and contractors, and termination of grants to networks funded by USAGM. *Widakuswara*, ECF No. 1. The *Widakuswara* plaintiffs' Complaint set forth the history of President Trump's animus toward VOA, *id.* ¶¶ 55-73, and the actions the defendants took to effectively shut down USAGM and VOA and to silence the independent reporting the plaintiff journalists produced, *id.* ¶¶ 74-93.

Likewise, in this case, journalists employed by VOA or one of its sister networks, along with associations of journalists and other literary and media professionals, challenge Defendants' continuing efforts to destroy VOA's editorial independence. These actions violate the First Amendment and constitute a breach of the Statutory Firewall, which was established by Congress to shield VOA and its sister networks' "professional independence and integrity." ECF No. 1, ¶ 125 (quoting 22 U.S.C. § 6204(b)). Plaintiffs' claims in this case arise from the same animus the Trump administration has shown toward VOA's professional independence. *See id.* ¶¶ 34-40. Plaintiffs' Complaint in this case alleges that throughout the period of the *Widakuswara* litigation, Defendants "continually breached the Statutory Firewall designed to protect and uphold VOA's mission[.]" *Id.* ¶ 43. Plaintiffs' Complaint accurately reflects how the actions challenged in this case are a continuance of the Trump administration's illegal attempt to destroy VOA's editorial independence.

When cases are as closely related as this case and *Widakuswara* are, it would be a waste of judicial resources for two different judges to have to familiarize themselves with the intricate factual and legal issues at issue in both cases, especially when this Court has already spent over a year overseeing the *Widakuswara* litigation, which has been complex and convoluted. *See Owens v. Republic of Sudan*, No. CV 01-2244 (JDB), 2021 WL 131446, at *4 (D.D.C. Jan. 14, 2021) ("[I]t is plain that having a single judge decide identical—and complex—issues of fact and law would conserve judicial resources."); *Assiniboine & Sioux Tribe of Fort Peck Indian Rsrv. v. Norton*, 211 F. Supp. 2d 157, 159 (D.D.C. 2002) ("It would waste judicial resources and be nonsensical to have another court address these same factual issues, particularly in light of the fact that this Court has already heard weeks of testimony regarding these computer systems."). Preserving judicial resources is the reason Local Civil Rule 40.5(a)(3) exists. The *Widakuswara*

litigation provides critical context for the events that led to the filing of the instant lawsuit—context with which this Court is already deeply familiar from the *Widakuswara* suit.

Both *Widakuswara* and this suit also seek the same overarching goal: the federal government's compliance with the Constitution and federal law in its management of VOA. Courts in this district have recognized that where two suits seek the same overall relief, that militates in favor of finding cases related. *See Norton*, 211 F. Supp. at 158 (noting that two cases had the same "ultimate goal" before finding that they are related pursuant to Local Civil Rule 40.5(a)(3)).

Defendants' attempt to differentiate this case from *Widakuswara* falls short. Defendants argue that this case cannot be designated as related because "[t]he claims in *Widakuswara* primarily revolve around USAGM restructuring pursuant to Executive Order 14,238," while this case "focus[es] on the substantive interactions between USAGM and VOA journalists over the substance of their reporting." ECF No. 23 at 4-5. This oversimplified recitation of only some of the *Widakuswara* claims pointedly ignores that *Widakuswara* is not merely about Executive Order 14238. Rather, it addresses the Trump administration's larger—an ongoing—campaign to gut VOA and thwart VOA's editorial independence.

As the Court knows, the *Widakuswara* litigation has resulted in numerous orders blocking agency action—initially a temporary restraining order, *Widakuswara*, ECF No. 54, then a preliminary injunction, *Widakuswara*, ECF No. 99, and later grants of partial summary judgment on the Appointments Clause and Federal Vacancies Reform Act Claims, *Widakuswara*, ECF No. 218, and APA claims, *Widakuswara*, ECF No. 222. While some of these orders have been stayed pending appeal, *see Widakuswara v. Lake*, No. 25-5144 (D.C. Cir. Mar. 31, 2026), ECF No. 2166451; *id.* (May 1, 2025), ECF No. 1208735658, it is safe to say that, as a

result of the Court's orders in *Widakuswara*, the Trump administration, thus far, has been stopped from wholly dismantling VOA. Now, Defendants have turned to the next phase of the same campaign, which is addressed in this suit, specifically: Defendants' commandeering of VOA's newsroom, elimination of VOA's journalistic independence, and use of VOA to promote the White House's editorial priorities by breaking down the Statutory Firewall between the editorial side and the political/business side of USAGM. The two cases have thus grown out of the same event or transaction and are related for purposes of Local Civil Rule 40.5(a)(3).

## II.    None of the Cases Cited by Defendants Support Their Position.

The cases cited by Defendants in their objection to Plaintiffs' related case designation do not support Defendants' position.

In *Millard v. Gov't of D.C.*, this Court rejected the plaintiffs' attempt to relate a case challenging the District of Columbia's policies and practices for gun registration and licensing between 2019 and 2021 to an earlier case filed in 2015 that challenged the District's policy of seizing and keeping guns after arrests, with named plaintiffs who were arrested between 2012 and 2014. No. 1:22-CV-2672-RCL, 2023 WL 2301927, at *2 (D.D.C. Mar. 1, 2023). As the Court put it, the two cases "involve attacks on different laws, different policies, and involve different circumstances . . . [and] the pertinent facts in the two cases occurred during different time periods." *Id.* As Defendants note in their Objection, the Court made clear that the same transaction or occurrence prong "is reserved for those situations where some event or transaction 'uniquely precipitated this action' in a manner that suggests judicial economy would be gained by the same judge presiding over both." ECF No. 23 at 6 (quoting *Millard*, 2023 WL 2301927, at *3). Unlike in *Millard*, where the two suits stemmed from underlying events that were nearly a decade apart and involved different District policies, in this case and *Widakuswara*, there *is* a common event or transaction that "uniquely precipitated" the current case such that judicial

economy is served by the same judge handling both cases—Defendants' attempts to destroy VOA's editorial independence. *Id* at 6.

*Committee on the Judiciary v. McGahn*, 391 F. Supp. 3d 116, 120 (D.D.C. 2019), is distinguishable on similar grounds. In *McGahn*, the court rejected an effort to relate a case seeking to enforce a congressional subpoena to an earlier grand jury action requesting the release of grand jury material protected by Federal Rule of Criminal Procedure 6(e). 391 F. Supp. 3d 116, 120 (D.D.C. 2019). The court held that the two cases were not related because they did not "involve common issues of fact" and "involve different claims." *Id.* at 119. Moreover, the cases did not "grow out of the same event or transaction" because one case arose out of the Judiciary Committee's effort to enforce a subpoena and required interpretation of Congress's authority under the Constitution, while the other grew out of the Judiciary Committee's effort to obtain grand jury materials and involved interpretation of the Federal Rules of Criminal Procedure. *Id.* at 122. In other words, the two actions in *McGahn* involved different proceedings and claims and had different overarching goals. Meanwhile, this suit and *Widakuswara* involve the same central facts related to the government's same campaign to dismantle and infiltrate VOA, and the same types of claims regarding the same Defendants' violations of the First Amendment and breaches of the Statutory Firewall.

Defendants' reliance on *Keepseagle v. Glickman*, 194 F.R.D. 1 (D.D.C. 2000), is equally misplaced. In *Keepseagle*, Native American farmers brought a class action alleging that the Department of Agriculture discriminated against them on the basis of their race in reviewing their applications for certain programs and designated the lawsuit as related to a similar lawsuit brought by African-American farmers. *Id.* at 1. The court rejected the plaintiffs' related case designation because the only relationship between the two cases was "that both sets of plaintiffs

9

are farmers who are members of protected classes and both complain of similar discrimination at the hands of the Department of Agriculture." *Id.* at 3. The two cases involved separate acts of discrimination that allegedly occurred as a result of decisions by county commissions in different regions of the country, so the suits were factually distinct and did not involve common events or transactions. *Id.* Here, the two cases involve the *exact same* decisionmakers and target actions they took to advance the same Trump administration campaign to gut VOA and remake it into a White House propaganda instrument.

Finally, *DSCC v. Trump*, No. CV 26-1114 (CKK), 2026 WL 1012587 (D.D.C. Apr. 8, 2026), does not support Defendants' objection. In *DSCC*, the court determined that the cases did "not involve common issues of fact" because they involved "challenges to different Executive Orders" that were "signed more than a year apart from one another" and involved "a different set of federal agencies and departments and involve[d] different goals and priorities." *Id.* at *3 (cleaned up). In contrast, here, both this suit and *Widakuswara* involve challenges to the Trump administration's ongoing actions with respect to the same federal agency (USAGM) and same federal broadcaster (VOA), and the administration's same "goals and priorities" with respect to VOA's editorial output.

**CONCLUSION**

For all of these reasons, the Court should overrule Defendants' Objection to Plaintiffs' Notice of Related Case.

10

Dated:        May 14, 2026

DEMOCRACY DEFENDERS FUND

  /s/ Taryn Wilgus Null
Norman L. Eisen (D.C. Bar # 435051)
Taryn Wilgus Null (D.C. Bar # 985724)
Lindsay W. Zimliki (D.C. Bar # 475890)
Zsa'Queria Martin (*pro hac vice*)

600 Pennsylvania Avenue SE #15180
Washington, DC 20003
norman@democracydefenders.org
taryn@democracydefenders.org
lindsay@democracydefenders.org
zsaqueria@democracydefenders.org

GOVERNMENT ACCOUNTABILITY
PROJECT

David Z. Seide (D.C. Bar # 421899)

1612 K Street, NW
Washington, DC 20006
(202) 457-0034
davids@whistleblower.org

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

Andrew G. Celli, Jr. (*pro hac vice*)
Nick Bourland (*pro hac vice*)
Daniel M. Eisenberg (D.C. Bar # 90017823)
Rachael Wyant (*pro hac vice*)

One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000
acelli@ecbawm.com
nbourland@ecbawm.com
deisenberg@ecbawm.com
rwyant@ecbawm.com

MEDIA FREEDOM & INFORMATION
ACCESS CLINIC - YALE LAW SCHOOL

David Schulz (D.C. Bar # 459197)

127 Wall Street
New Haven, CT 06520
david.schulz@ylsclinics.org

*Counsel for Plaintiffs*

**Pro hac vice* application pending

11