**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BARRY NEWHOUSE, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br><br>U.S. AGENCY FOR GLOBAL MEDIA, *et al.*,<br><br>    Defendants. | Case No. 26-cv-00980-RCL |

**<u>DEFENDANTS' MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.      Statutory Background ............................................................................................. 2

II.     Factual Background ................................................................................................ 4

LEGAL STANDARD.......................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.      Plaintiffs' First Amendment Claims Fail............................................................... 5

II.     Plaintiffs Lack a Cause of Action Under the APA. ............................................. 10

        A.      Application of § 6204 is "committed to agency discretion by law."............... 10

        B.      Plaintiffs fail to challenge final agency action....................................... 12

        C.      Plaintiffs allege no statutory violation. ............................................... 13

III.    The Declaratory Judgment Act, Mandamus Act, and All Writs Act Claims Fail. ........... 15

IV.     Defendants Should Be Relieved of Their Obligation to Comply with Local Civil
        Rule 7(n)(1)............................................................................................. 16

CONCLUSION................................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Achagzai v. Broad. Bd. of Governors*,
Civ. A. No. 14- 768 (RDM), 2016 WL 471274  (D.D.C. Feb. 8, 2016).................................... 6

*Adams v. Trs. of Univ. of N.C.-Wilmington*,
640 F.3d 550 (4th Cir. 2011) ................................................................................................. 7

*Al-Aulaqi v. Obama*,
727 F. Supp. 2d 1 (D.D.C. 2010) ......................................................................................... 10

*Ali v. Rumsfeld*,
649 F.3d 762 (D.C. Cir. 2011) .............................................................................................. 15

*Am. Hosp. Ass'n v. Burwell*,
812 F.3d 183 (D.C. Cir. 2016) .............................................................................................. 16

*Am. Nat'l Ins. Co. v. FDIC*,
642 F.3d 1137 (D.C. Cir. 2011) .............................................................................................. 4

*Arab v. Blinken*,
600 F. Supp. 3d 59 (D.D.C. 2022) ........................................................................................ 17

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) .................................................................................................. 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................ 5

*Ass'n of Battery Recyclers, Inc. v. EPA*,
716 F.3d 667 (D.C. Cir. 2013) .............................................................................................. 17

*Atherton v. D.C. Off. of the Mayor*,
567 F.3d 672 (D.C. Cir. 2009) ................................................................................................ 5

*Baker v. Carr*,
369 U.S. 186 (1962) ................................................................................................................ 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................ 5

*Bennett v. Spear*,
520 U.S. 154 (1997) .............................................................................................................. 12

*Bowie v. Maddox*,
653 F.3d 45 (D.C. Cir. 2011) .................................................................................................. 5

*Carroll v. Off. of Fed. Contract Compliance Programs, U.S. Dep't of Lab.*,
  235 F. Supp. 3d 79 (D.D.C. 2017) ........................................................................... 18

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105
  (1977) ........................................................................................................................ 12

*Cobell v. Kempthorne*,
  455 F.3d 301 (D.C. Cir. 2006) ................................................................................. 13

*Connecticut v. U.S. Dep't of Interior*,
  344 F. Supp. 3d 279 (D.D.C. 2018) ......................................................................... 18

*Demers v. Austin*,
  746 F.3d 402 (9th Cir. 2014) ..................................................................................... 7

*Diakanua v. Rubio,*
  Civ. A. No. 24-1027 (TJK), 2025 WL 958271 (D.D.C. Mar. 31, 2025) ................... 17

*Disner v. United States*,
  888 F. Supp. 2d 83 (D.D.C. 2012) .............................................................................. 4

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006) ............................................................................................... 5, 6

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ................................................................................................. 14

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ........................................................................................... 10, 12

*Heim v. Daniel*,
  81 F.4th 212 (2d Cir. 2023) ........................................................................................ 7

*Hohn v. United States*,
  524 U.S. 236 (1998) ................................................................................................... 7

*In re Cheney*,
  406 F.3d 723 (D.C. Cir. 2005) ................................................................................. 16

*Jewell v. Jagadesan*,
  No. 25-CV-1322 (DLF), 2026 WL 686105 (D.D.C. Mar. 11, 2026) ......................... 6

*Johanns v. Livestock Marketing Assn.*,
  544 U.S. 550, (2005) ................................................................................................... 6

iii

*Jones v. Bush*,
  160 F. Supp. 3d 325 (D.D.C. 2016), *aff'd*, No. 16-5103, 2017 WL 2332595 (D.C. Cir. Feb. 21,
  2017) ............................................................................................................................. 6

*Lackey v. Stinnie*,
  604 U.S. 192 (2025) ...................................................................................................... 7

*Lewis v. Gov't of D.C.*,
  282 F. Supp. 3d 169 (D.D.C. 2017) ............................................................................... 6

*Libertarian Nat'l Comm., Inc. v. Fed. Election Comm'n*,
  924 F.3d 533 (D.C. Cir. 2019) ..................................................................................... 8

*Lozada Colon v. U.S. Dep't of State*,
  170 F.3d 191 (D.C. Cir. 1999) .................................................................................... 16

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................................... 4

*Lujan v. National Wildlife Federation*,
  497 U.S. 871 (1990) .................................................................................................... 13

*Martin v. EPA*,
  271 F. Supp. 2d 38 (D.D.C. 2002) ............................................................................... 9

*Mdewakanton Sioux Indians of Minn. v. Zinke*,
  264 F. Supp. 3d 116 (D.D.C. 2017) ............................................................................ 18

*Meriwether v. Hartop*,
  992 F.3d 492 (6th Cir. 2021) ....................................................................................... 7

*Mpoy v. Rhee*,
  758 F.3d 285 (D.C. Cir. 2014) ..................................................................................... 5

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ........................................................................................................ 9

*Norton v. Southern Utah Wilderness Alliance*,
  542 U.S. 55 (2004) ...................................................................................................... 13

*PETA, Inc. v. U.S. Fish & Wildlife Serv.*,
  59 F. Supp. 3d 91 (D.D.C. 2014) ............................................................................... 18

*Pickering v. Bd. of Educ. of Twp. High School Dist. 205, Will Cnty*,
  391 U.S. 563 (1968) ...................................................................................................... 8

*Pleasant Grove City v. Summum*,
  555 U.S. 460 (2009) ...................................................................................................... 6

*Porter v. CIA*,
   778 F. Supp. 2d 60 (D.D.C. 2011) ................................................................................. 5

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
   566 U.S. 639 (2012) ..................................................................................................... 15

*RCM Techs., Inc. v. DHS*,
   614 F. Supp. 2d 39 (D.D.C. 2009) ............................................................................... 13

*Rodriguez de Quijas v. Shearson/American Express, Inc.*,
   490 U.S. 477 (1989) ....................................................................................................... 7

*Roth v. United States*,
   354 U.S. 476 (1957) ....................................................................................................... 9

*Scolaro v. D.C. Bd. of Elections & Ethics*,
   104 F. Supp. 2d 18 (D.D.C. 2000) ................................................................................. 4

*Sharifymoghaddam v. Blinken*,
   No. 1:23-cv-1472 (RCL), 2023 WL 8047007 (D.D.C. Nov. 17, 2023) ....................... 17

*Skalka v. Kelly*,
   246 F. Supp. 3d 147 (D.D.C. 2017) .............................................................................. 15

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ........................................................................................................ 17

*Steenholdt v. FAA*,
   314 F.3d 633 (D.C. Cir. 2003) ...................................................................................... 10

*Talal Al-Zahrani v. Rodriguez*,
   669 F.3d 315 (D.C. Cir. 2012) ...................................................................................... 17

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
   566 U.S. 560 (2012) ...................................................................................................... 15

*Turner v. U.S. Agency for Global Media*,
   502 F. Supp. 3d 333 (D.D.C. 2020) ...................................................................... 7, 8, 12

*U.S. Sugar Corp. v. EPA*,
   830 F.3d 579 (D.C. Cir. 2016) ...................................................................................... 12

*United States v. Curtiss-Wright Exp. Corp.*,
   299 U.S. 304 (1936) ...................................................................................................... 11

*Univ. of Texas v. Camenisch*,
   451 U.S. 390 (1981) ....................................................................................................... 7

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
　425 U.S. 748 (1976) ............................................................................................................ 8

*Webster v. Doe*,
　486 U.S. 592 (1988) .......................................................................................................... 10

*Wilburn v. Robinson*,
　480 F.3d 1140 (D.C. Cir. 2007) .......................................................................................... 8

**Statutes**

5 U.S.C. § 551(13) ........................................................................................................... 12, 13

5 U.S.C. § 701(a)(2) .......................................................................................................... 10, 12

5 U.S.C. § 704 .................................................................................................................... 10, 12

5 U.S.C. § 706 ......................................................................................................................... 12

22 U.S.C. § 6201 ....................................................................................................................... 2

22 U.S.C. § 6202 .............................................................................................................. *passim*

22 U.S.C. § 6203(b)(1) ............................................................................................................. 3

22 U.S.C. § 6204 .............................................................................................................. *passim*

22 U.S.C. § 6209b .................................................................................................................... 14

22 U.S.C. § 6216(a)(1) ............................................................................................................. 11

International Broadcasting Act,
　Pub. L. No. 114-328, 130 Stat. 2000 § 1288 (2016) ........................................................... 3

**Rules**

Federal Rule of Civil Procedure 12(b)(1) .................................................................................. 4

Federal Rule of Civil Procedure 12(b)(6) .................................................................................. 5

Local Rule 7(n)(1) ............................................................................................................... 16, 18

**Other Authorities**

*Independence*, Black's Law Dictionary (12th ed. 2024) .............................................................. 15

*Integrity*, Black's Law Dictionary (12th ed. 2024) ................................................................... 15

*Professional*, Black's Law Dictionary (12th ed. 2024) .............................................................. 15

**INTRODUCTION**

Plaintiffs—four journalists and two organizations—challenge the operation of the United States Agency for Global Media ("USAGM"), which runs various government-funded media networks. By statute, USAGM and its broadcasting activities, including those of Voice of America ("VOA"), must "be consistent with the broad foreign policy objectives of the United States[,]" 22 U.S.C. § 6202(a)(1), and must "support United States foreign policy objectives during crises abroad[,]" *id.* § 6202(b)(4). Notwithstanding their status as government employees who conduct government-funded and government-operated activities in support of government-defined foreign policy objectives, the journalist Plaintiffs claim that USAGM's broadcasting services, specifically VOA, must be operated as "independent journalistic outlet[s]" that "enjoy the same journalistic and editorial freedoms as private news organizations protected by the First Amendment." Compl. ¶ 7, ECF No. 1. Not so.

By statute, USAGM must "not duplicate the activities of private United States broadcasters[,]" 22 U.S.C. § 6202(a)(3). Its broadcasting must "be consistent with the broad foreign policy objectives of the United States[,]" *id*. § 6202(a)(1); "be consistent with the international telecommunications policies and treaty obligations of the United States[,]" *id*. § 60202(a)(2); include "a balanced and comprehensive projection of United States thought and institutions," *id*. § 6202(b)(2); and include "clear and effective presentation of the policies of the United States Government," *see id*. § 6202(b)(3). USAGM's Chief Executive Officer ("CEO") must supervise *all* broadcasting activities, *id*. § 6204(a), to ensure (among other things) compliance with Section 6202. Thus, while the CEO must "respect the professional independence and integrity" of USAGM's "broadcasting services" *id*. § 6204(b), the agency is by no means wholly insulated from the political considerations that inform foreign policy. To the

1

contrary, the statute expressly mandates those foreign policy considerations. That is because USAGM is ultimately a tool of United States foreign policy.

Because all USAGM reporting was promulgated by the Plaintiff journalists in their official capacity, they were not speaking as citizens for First Amendment purposes and thus do not have a First Amendment cause of action based on USAGM's statutorily required oversight of that reporting. And because the Plaintiff journalists do not have unfettered editorial discretion, the Plaintiff organizations do not have a right to receive that purported unfettered reporting. Moreover, Plaintiffs' argument that they have a statutory right to their specific version of journalistic independence is not consistent with Congressional direction. The statutory provision that calls for "professional independence and integrity," *id*. § 6204(b), does not support Plaintiffs' position that USAGM broadcasting is completely insulated from policy considerations, and as a result, Plaintiffs cannot state a claim on that basis. Plaintiffs' claims should therefore be dismissed.

## BACKGROUND

### I.      Statutory Background

The United States funds and operates a network of broadcast media organizations throughout the world to "promote the right of freedom of opinion and expression" and to advance "the goals of United States foreign policy." 22 U.S.C. § 6201. By statute, USAGM supervises and governs these broadcast organizations. Among other requirements, Congress directed that all USAGM government-funded and operated international broadcasts "shall" be "consistent with the broad foreign policy objectives of the United States[,]" and "shall include" "a balanced and comprehensive projection of United States thought[s] and institutions[.]" *Id*. § 6202(a)(1), (b)(2); *see also id*. § 6202(c)(2) (same for VOA broadcasts). This includes "the

2

capability to provide a surge capacity to support United States foreign policy objectives during crises abroad[.]" *Id.* § 6202(b)(4). In addition, Congress directed that U.S. international broadcasting efforts "shall" promote democratic values such as "respect for human rights, including freedom of religion" and "shall . . . be consistent with" U.S. treaty obligations and policy commitments such as "the international telecommunications policies . . . of the United States." *Id.* §§ 6202(a)(2), (a)(8). Further, USAGM international broadcasting efforts "shall . . . not duplicate the activities of private United States broadcasters" or other democratic nations' government-supported broadcasting entities. *Id*. § 6202(a)(3)–(4).

The International Broadcasting Act ("IBA"), as amended, vests control of the USAGM in a CEO, who is the statutory "head" of the Agency. *See* 22 U.S.C. §§ 6203(b)(1), 6204; Pub. L. No. 114-328, 130 Stat. 2000, 2548 (2016). The CEO may "supervise all broadcasting activities," 22 U.S.C. § 6204(a)(1); "assess the quality, effectiveness, and professional integrity" of broadcast activities, *id*. § 6204(a)(2); "ensure" broadcast activities are consistent with the standards Congress established, including that they be "balanced and comprehensive," *id*. §§ 6204(a)(3), 6202(b)(2); and "appoint such personnel for the [CEO] as the [CEO] may determine to be necessary," *id*. § 6204(a)(11). Congress subjected these authorities to the proviso that the CEO "shall respect the professional independence and integrity of" the various broadcast services, *id*. § 6204(b), consistent with the general congressional mandate that U.S. international broadcasting "be conducted in accordance with the highest professional standards of broadcast journalism[,]" *id*. § 6202(a)(5), and maintain technical excellence, see *id*. § 6202(a)(6)-(7), (b) (requiring, among other things, the provision of reliable and balanced news, reliable research, transmitter, and relay capacity, and technical support for independent indigenous media). Ultimately, USAGM activities must be consistent with the foreign policy objectives of the

United States. *See* 22 U.S.C. § 6202(a)(1).

## II.    Factual Background

Plaintiffs are four journalists who worked for USAGM (three employees currently on administrative leave and one contractor who "declined the offer" to return to work) and two organizations that allegedly support USAGM employees and rely on USAGM reporting. *See* Compl. ¶¶ 14-17.

Plaintiffs' Complaint asserts five counts: (1) Count I—alleging that Defendants violated the journalists' First Amendment rights, *id*. ¶¶ 99-110; (2) Count II—alleging that Defendants violated the organizations' First Amendment right to receive information, *id*. ¶¶ 111-19; (3) Count III—alleging that Defendants' breaches of the purported "firewall" violate the APA, *id*. ¶¶ 120-27; (4) Count IV—Declaratory Judgment Act claim "on the basis of all claims," *id*. ¶¶ 128-29; and (5) Count V—Mandamus Act and All Writs Act "to compel Defendants to act in accordance with their statutory functions[,]" *id*. ¶¶ 130-35.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject-matter jurisdiction over an action. The party invoking federal jurisdiction bears the burden of proving its existence. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). The court must assume the truth of all well-pleaded factual allegations, *see American National Insurance Co. v. Federal Deposit Insurance Corp.*, 642 F.3d 1137, 1139 (D.C. Cir.   2011), but not legal conclusions or unsupported factual inferences, *see Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012). Finally, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v.*

4

*D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As with a motion to dismiss for lack of subject-matter jurisdiction, the Court will ordinarily "accept as true all of the factual allegations contained in the complaint[,]" *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (citation omitted), and construe it in plaintiff's favor. *See Porter v. CIA*, 778 F. Supp. 2d 60, 65 (D.D.C. 2011), but should not credit "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I.    Plaintiffs' First Amendment Claims Fail.

1. There is no dispute that VOA performs a "government function." Compl. ¶ 29. Yet in Count I, four plaintiffs (the "Journalist Plaintiffs") challenge alleged restrictions on their journalistic work for VOA. *Id.* ¶¶ 106, 108. That claim fails because the Journalist Plaintiffs have no First Amendment interest in speech conducted as part of their work for the government. *See Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006).

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes," and have "no First Amendment cause of action based on his or her employer's reaction to the speech." *Id*. at 418, 421. Thus, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Id.* at 421–22; *see also Mpoy v. Rhee*, 758 F.3d 285, 290- 91 (D.C. Cir. 2014); *Bowie v.*

5

*Maddox*, 653 F.3d 45, 48 (D.C. Cir. 2011).[1] That speech is, in essence, the government's own speech. *Achagzai v. Broad. Bd. of Governors*, Civ. A. No. 14- 768 (RDM), 2016 WL 471274, at *8 (D.D.C. Feb. 8, 2016) (holding that VOA's "content constitutes government speech that is not protected by the First Amendment"); *see Garcetti*, 547 U.S. at 421-22 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created."); *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) ("The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." (citing *Johanns v. Livestock Marketing Assn.*, 544 U.S. 550, 553, (2005)).

*Garcetti* squarely forecloses Journalist Plaintiffs' First Amendment claims. Journalist Plaintiffs do not challenge restrictions on their speech as private "citizens about matters of public concern." 547 U.S. at 419. Rather, they challenge alleged restrictions on their "news coverage" and "operations" as government journalists, Compl. ¶ 106, something they concede is a "government function," *id.* ¶ 29. *See, e.g.*, Compl. ¶ 92 (alleging restriction on Journalist Plaintiffs' work speech "as part of their work at VOA"). Under *Garcetti*, they have no First Amendment interest in such speech.

---

[1] *See, e.g.*, *Jewell v. Jagadesan*, No. 25-CV-1322 (DLF), 2026 WL 686105, at *4 (D.D.C. Mar. 11, 2026) ("[Plaintiff] fails to state a First Amendment claim because she does not identify any speech made outside of her duties as [a government employee]. [Plaintiff] 'did not act as a citizen' for 'First Amendment purposes' when performing her official duties as [a government employee]." (quoting *Garcetti*, 547 U.S. at 421–22)); *Lewis v. Gov't of D.C.*, 282 F. Supp. 3d 169, 182 (D.D.C. 2017) ("Based on the undisputed facts, the Court finds that Plaintiff's job as an HR advisor included relating concerns about the new policy on behalf of [agency] staff. Her speech doing precisely that, therefore, is not protected by the First Amendment."); *Jones v. Bush*, 160 F. Supp. 3d 325, 341 (D.D.C. 2016), *aff'd*, No. 16-5103, 2017 WL 2332595 (D.C. Cir. Feb. 21, 2017) ("[P]laintiff's speech was not protected by the First Amendment because it stemmed from a matter within the scope of her official duties." (citations omitted)).

Journalist Plaintiffs' invoke the preliminary injunction order in *Turner v. U.S. Agency for Global Media*, 502 F. Supp. 3d 333 (D.D.C. 2020), which concluded that *Garcetti* does not apply to VOA journalists. Compl. ¶ 11. *Turner* analogized VOA journalist to the "teaching and writing activities" of "faculty members at public universities," which some Courts of Appeals (but not the D.C. Circuit) have held is not subject to *Garcetti*. *Turner*, 502 F. Supp. 3d at 375 (citing *Demers v. Austin*, 746 F.3d 402, 411 (9th Cir. 2014) and *Adams v. Trs. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 562 (4th Cir. 2011)); *see also Heim v. Daniel*, 81 F.4th 212, 227 (2d Cir. 2023); *Meriwether v. Hartop*, 992 F.3d 492, 506-07 (6th Cir. 2021).

No binding authority authorizes this exception from *Garcetti*. *See Hohn v. United States*, 524 U.S. 236, 252-53 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." (citing *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484 (1989)); *see also Lackey v. Stinnie*, 604 U.S. 192, 200–201 (2025) (noting that preliminary injunction orders "do not conclusively resolve legal disputes" and cautioning against "improperly equat[ing] likelihood of success with success and treating preliminary injunctions as 'tantamount to decisions on the underlying merits.'" (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 394 (1981)). Journalist Plaintiffs' work for VOA is not analogous to public university academics' writing and teaching activities. Unlike university professors, Journalist Plaintiffs play a role in carrying out U.S. foreign policy. As explained above, Congress directed that all government-funded and operated international broadcasts under the USAGM umbrella "shall" be "consistent with the broad foreign policy objectives of the United States[,]" and "shall include" "a balanced and comprehensive projection of United States thought[s] and institutions[.]" 22 U.S.C. § 6202(a)(1), (b)(2); *id*. § 6202(b)(3) ("United States international broadcasting shall

7

include . . . clear and effective presentation of the policies of the United States Government and responsible discussion and opinion on those policies, including editorials, broadcast by the Voice of America, which present the views of the United States Government."). Whatever may be the rule for public universities, Journalist Plaintiffs have no First Amendment rights over a government sanctioned media outlet that is statutorily required to account for the United States' foreign policy objectives.

Even if *Garcetti* were inapplicable, the same reasoning demonstrates that Journalist Plaintiffs' claims would fail under *Pickering v. Bd. of Educ. of Twp. High School Dist. 205, Will Cnty*, 391 U.S. 563 (1968). *See Turner*, 502 F. Supp. 3d at 376 (applying *Pickering* rather than *Garcetti* to First Amendment claim). Under *Pickering*, even a government employee's speech as a citizen on matters of public concern is not protected if "the governmental interest in promoting the efficiency of the public services it performs through its employees outweighs the employee's interest, as a citizen, in commenting upon matters of public concern." *Wilburn v. Robinson*, 480 F.3d 1140, 1149 (D.C. Cir. 2007) (citation modified). The government's interest in pursuing its foreign policy objectives—and in complying with its statutory obligation to ensure that VOA aligns with those objectives—outweighs Journalist Plaintiffs interest in speaking through VOA. To be sure, the Complaint only challenges "government function[s]" through "[g]overnment-funded journalism, reporting, and broadcasting," Compl. ¶¶ 26, 29. Journalist Plaintiffs remain free to engage in speech "as [] citizen[s]" or any other activity protected by the First Amendment. *See Pickering*, 391 U.S. at 568.

2.  For the same reason, the remaining Plaintiffs' claim in Count II based on their alleged right to receive information fails. The First Amendment rights of speakers and listeners are "reciprocal." *Libertarian Nat'l Comm., Inc. v. Fed. Election Comm'n*, 924 F.3d 533, 560 (D.C.

8

Cir. 2019) (en banc) (Katsas, J., concurring in part) (quoting *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 757 (1976)). "[T]he right of one party to speak implies the right of another party to listen." *Id*. at 560 (Katsas, J., concurring in part). And because a would-be listener's rights are "derivative of the First Amendment rights of the speaker[,]" *Martin v. EPA*, 271 F. Supp. 2d 38, 47 (D.D.C. 2002) (citation omitted), there is no right to listen to unprotected speech, *cf. Roth v. United States*, 354 U.S. 476, 492-93 (1957). Because, for all the reasons above, Journalist Plaintiffs' VOA speech is unprotected, no Plaintiff can claim First Amendment right as a listener.

Even if the Journalist Plaintiffs' speech were protected, the listeners' claims fail under *Murthy v. Missouri*, 603 U.S. 43, 75 (2024). There, the Supreme Court rejected a "startlingly broad" theory that would grant "the right to sue over *someone else's* censorship—at least so long as they claim an interest in that person's speech." *Id.* Although an individual may have a "First Amendment right to receive information and ideas," cognizable injury is only established "where the listener has a concrete, specific connection to the speaker." *Id*. (citation modified). The Court rejected the plaintiffs' claims that access to "unfettered speech on social media [was] critical to their work as scientists, pundits, and activists[,]" concluding that they did "not point to any specific instance of content moderation that caused them identifiable harm." *Id*. Likewise, Plaintiffs' allegation that they "rely on reporting from USAGM networks, including VOA, as a consistent, critical flow of information around the world," Compl. ¶ 115, fails to establish any injury that is sufficiently concrete and particularized.[2]

_____

[2] Journalist Plaintiffs must also establish a concrete and particularized injury that is traceable to Defendants' actions. *See Murthy*, 603 U.S. at 57. Plaintiff Ksenia Turkova states that "USAGM offered [her] the opportunity to return to work" but that "she declined the offer." Compl. ¶ 17. Under these circumstances, Plaintiff Turkova has no "personal stake" in USAGM's employment conditions because she has voluntarily decided to reject an employment offer. *Baker v. Carr*, 369

## II.      Plaintiffs Lack a Cause of Action Under the APA.

To the extent Plaintiffs' APA claims are predicated on alleged First Amendment violations, they fail for all the reasons above. They also fail for three additional reasons. First, application of the relevant statute—§ 6204(b)—is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Second, Plaintiffs do not challenge any "final agency action." *Id*. § 704. And third, Plaintiffs misapply the statutory scheme.

### A.      Application of § 6204 is "committed to agency discretion by law."

As an initial matter, the Court does not have subject-matter jurisdiction over Plaintiffs' APA claims. If agency action is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), then "the APA's waiver of sovereign immunity [does] not apply," *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 41 (D.D.C. 2010); *see Heckler v. Chaney*, 470 U.S. 821, 828 (1985) ("[B]efore any [APA] review at all may be had, a party must first clear the hurdle of § 701(a)."). Here, the IBA provides no meaningful standard by which a court might adjudicate Plaintiffs' claims because satisfaction of § 6204 is committed to agency discretion under § 701.

Agency action is "committed to agency discretion by law" when a "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," which renders "meaningful judicial review is impossible." *Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003) (quoting *Heckler*, 470 U.S. at 830). This is true "even where Congress has not affirmatively precluded review." *Heckler*, 470 U.S. at 830. Hallmarks of a

---

U.S. 186, 204 (1962). Stated differently, Plaintiff Turkova cannot satisfy Article III because she is not subject to the unconstitutional conditions she challenges.

decision committed to agency discretion include a statute that puts the onus on the agency, not the courts, to apply a standard, *see Webster v. Doe*, 486 U.S. 592, 600 (1988), and general criteria that make it difficult for courts to meaningfully second-guess an agency's determination, *see id*. ("advisable in the interests of the United States" is unreviewable (citation omitted)).

Section 6204 is just such a law because it requires balancing competing and potentially contradictory elements. While it calls on the CEO to "respect" the "professional independence" of USAGM broadcast networks, it also repeatedly makes clear that USAGM networks must act consistent with United States foreign policy. When read in conjunction with the broad supervisory authority that Congress bestowed upon the CEO, the requirement that the CEO "respect" the "professional independence" is not capable of judicial application. Congress required the CEO to "supervise" the networks, to "assess the professional integrity" of the networks, and to "ensure" that coverage is "balanced and comprehensive." 22 U.S.C. § 6204(a); *id*. § 6202(b). At the same time, Congress mandated that USAGM broadcasts must be "consistent with the broad foreign policy objectives of the United States[,]" and "shall include" "a balanced and comprehensive projection of United States thought[s] and institutions[.]" *Id*. § 6202(a)(1), (b)(2); *see also id*. § 6202(c)(2) (same for VOA). And Congress specifically provided that USAGM must support United States foreign policy in times of foreign policy "crisis," an undefined term that the political branches must be able to define. *See id*. § 6216(a)(1) ("Whenever the President determines it to be important to the national interests of the United States and so certifies to the appropriate congressional committees, the President, on such terms and conditions as the President may determine, is authorized to direct any department, agency, or other entity of the United States to furnish the United States Agency for Global Media with such assistance outside the United States as may be necessary to provide international broadcasting

11

activities of the United States with a surge capacity to support United States foreign policy objectives during a crisis abroad."); *see also United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936) ("The President is the sole organ of the nation in its external relations, and its sole representative with foreign nations." (citation omitted)).

The statutory scheme, considered as a whole, requires the CEO to determine the appropriate balance between competing factors—his supervisory demands and the networks' independence. But how to strike that balance is left to the CEO's discretion. *See Heckler*, 470 U.S. at 830 ("[I]f no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" (quoting 5 U.S.C. § 706)); c*f. U.S. Sugar Corp. v. EPA*, 830 F.3d 579, 640 (D.C. Cir. 2016) ("The Congress required the EPA to consider a variety of factors without telling the EPA how to weigh them. That calculus belongs to the EPA's discretion."). Congress provided no statutory standard by which a court might assess whether, for example, a CEO's actions to "ensure" that coverage is "balanced" and "effective[] . . . within the context of the broad foreign policy objectives of the United States" also show sufficient "respect" for a network's independence. *Turner*, 502 F. Supp. 3d at 344. Because the IBA is drawn so broadly that there is "no law to apply," and the agency's discretion is essentially unfettered, judicial review of Plaintiffs' APA claims is precluded under § 701(a)(2). *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

**B.      Plaintiffs fail to challenge final agency action.**

The APA establishes a cause of action for plaintiffs to challenge "final agency action." 5 U.S.C. § 704. The term "agency action" refers to "the whole or a part of an agency rule, order,

license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" *Id*. § 551(13). And to be considered "final," "the action must mark the consummation of the agency's decisionmaking process" and "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation modified). "[A]n on-going program or policy is not, in itself, a final agency action under the APA[.]" *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (citation modified). Rather, a plaintiff may challenge "some particular 'agency action,'" *Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990), that is "circumscribed" and "discrete," *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004), and meets *Bennett*'s two-part test.

Plaintiffs do not seek judicial review of any such discrete agency action. Indeed, they fail to challenge anything that resembles a "rule, order, license, sanction, [or] relief[.]" 5 U.S.C. § 551(13). Rather, they seek wholesale judicial review of USAGM's journalistic operations and leadership staffing decisions. *See* Compl. at 35-36 (Prayer for Relief) (seeking a declaration that Defendants' USAGM operation violates the First Amendment and the purported firewall). Addressing this type of claim would require the Court to supervise all the agency's activities. Such a claim would completely circumvent the purpose of the APA's discrete agency action requirement, which is to "protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Norton*, 542 U.S. at 66-67. Moreover, neither USAGM's specific editorial decisions, *see, e.g.*, Compl. ¶ 9, nor its staffing decisions, *see, e.g. id*. ¶¶ 45, 62, consummate any decision-making process or effect any legal consequence. *See RCM Techs., Inc. v. DHS*, 614 F. Supp. 2d 39, 46 (D.D.C. 2009) ("Courts stand ready to

13

entertain appeals from specific, concrete agency adjudications. But absent that, courts have neither the resources nor the expertise to superintend agency policy-making.").

### C.    Plaintiffs allege no statutory violation.

Even if reviewable, Plaintiffs' claims fail because they turn on their misapplication of the statutory scheme. In alleging that Defendants have breached the purported "Statutory Firewall"—a term notably absent from the statute—Plaintiffs first point to § 6202(a)(5), *see* Compl. ¶ 125, which states that USAGM broadcasting must "be conducted in accordance with the highest professional standards of broadcast journalism," 22 U.S.C. § 6202(a)(5). Plaintiffs also rely on § 6204(b), Compl. ¶ 125, which states that "[t]he Secretary of State and the Chief Executive Officer, in carrying out their functions, shall respect the professional independence and integrity of the Agency, its broadcasting services, and the grantees of the Agency," 22 U.S.C. § 6204(b). But Plaintiffs completely ignore the remaining statutory mandates that contextualize and cabin these provisions.

Plaintiffs' insistence on an unbreachable total separation between USAGM and VOA ignores USAGM's statutory mandate to ensure that government-sponsored broadcasting serves U.S. foreign policy interests. *See* 22 U.S.C. §§ 6202(a)(1)–(a)(3), (b)(2)–(b)(4); *see also id.* § 6202(c) ("VOA will represent America, not any single segment of American society, and will therefore present a balanced and comprehensive projection of significant American thought and institutions."); *id.* § 6209b ("To assist the Agency in carrying out its functions, the [CEO] shall regularly consult with and seek from the Secretary of State guidance on foreign policy issues."). After all, USAGM broadcasting necessarily implicates foreign affairs considerations squarely within the President's domain. *See Harlow v. Fitzgerald*, 457 U.S. 800, 812 n.19 (1982). Plaintiffs' myopic view likewise ignores that USAGM does not function as a traditional media

14

broadcaster because the nature of its news reporting is statutorily restricted. *See* 22 U.S.C. § 6202(a)(3) (prohibiting USAGM from "duplicat[ing] the activities of private United States broadcasters"); *id.* § 6202(a)(4) (prohibiting USAGM from "duplicat[ing] the activities of government supported broadcasting entities of other democratic nations"). Properly understood, the statutory scheme not only contemplates but requires the consideration of United States' interest through the agency's broadcasting. And it can only be the Executive that determines what those interests are.

The statute's general references to professional standards and integrity cannot bear the weight Plaintiffs place upon them. Because the terms "professional," "independence," and "integrity" are not defined, their ordinary meaning applies. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). The term "professional" means "well-trained and therefore skillful." *Professional*, Black's Law Dictionary (12th ed. 2024). Moreover, "independence" is defined as "[t]he quality, state, or condition of being independent." *Independence*, Black's Law Dictionary (12th ed. 2024). And "integrity" refers to "[f]reedom from corruption or impurity; soundness; purity." *Integrity*, Black's Law Dictionary (12th ed. 2024). The terms are, by their nature, extraordinarily general. Because "the specific governs the general" (rather than the other way around), *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (citation modified), these general terms cannot be read in derogation of the more specific requirement that USAGM must ensure that government broadcasting aligns with United States foreign policy interests, *see generally* 22 U.S.C. § 6204.

## III.    The Declaratory Judgment Act, Mandamus Act, and All Writs Act Claims Fail.

Because the First Amendment and APA claims fail, the Declaratory Judgment and Mandamus Act claims also fail. *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) ("It is a

well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction. Rather, the availability of declaratory relief presupposes the existence of a judicially remediable right." (citation modified)); *see also, e.g., Skalka v. Kelly*, 246 F. Supp. 3d 147, 154–55 (D.D.C. 2017) ("[T]here is no plausible cause of action at this time under either the APA or the Mandamus Act because the agencies' action has not been unlawfully withheld or unreasonably delayed.").

Moreover, the Mandamus Act and All Writs Act claims because they are not causes of action that are meant to be sustained in the alternative. For a court to issue a mandamus, the plaintiff must show "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). Regarding a defendant's duty to act, "[t]he law must not only authorize the demanded action, but require it; the duty must be clear and indisputable." *Lozada Colon v. U.S. Dep't of State*, 170 F.3d 191, 191 (D.C. Cir. 1999) (per curiam) (citation omitted).

Here, for the reasons previously explained, Plaintiffs' Complaint is devoid of any non-discretionary duty or clear duty to act directed at USAGM management. Underscoring this, the Complaint fails to articulate any specific request for relief beyond the general declaration that USAGM must comply with the law. *See* Compl. at 35-36 (Prayer for Relief) (requesting that Defendants be enjoined "from violating Plaintiffs' First Amendment right[s]" and "from violating the Statutory Firewall"). Plaintiffs' failure to articulate both a clear and indisputable right to relief and USAGM violation of a clear duty to act is fatal to its mandamus claim. *See In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) ("mandamus is drastic; it is available only in extraordinary situations" (citation modified)).

16

## IV.    Defendants Should Be Relieved of Their Obligation to Comply with Local Civil Rule 7(n)(1).

Defendants respectfully request that the Court relieve them of any obligation to comply with Local Rule 7(n)(1). Namely, the Court should excuse Defendants from filing a certified list of the contents of an administrative record and serving an administrative record simultaneously with this Motion. An administrative record is not necessary to resolve Defendants' Motion, which raises threshold legal issues—lack of jurisdiction and unavailability of judicial review— that are purely legal in nature.

First, this Court should determine whether it has jurisdiction over this case before requiring Defendants to compile and certify the administrative record. The Court must determine that it has jurisdiction before proceeding to the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (citation omitted)); *see also Talal Al-Zahrani v. Rodriguez*, 669 F.3d 315, 318 (D.C. Cir. 2012) ("Because a federal court without jurisdiction cannot perform a law-declaring function in a controversy, 'the Supreme Court has held that Article III jurisdiction is always an antecedent question to be answered prior to any merits inquiry.'" (citation modified)); *Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 674 (D.C. Cir. 2013) ("[T]his Circuit treats prudential standing as a jurisdictional issue which cannot be waived or conceded" (citation modified)).

Moreover, even if this Court has jurisdiction and judicial review were available, the production of an administrative record at this stage is unnecessary because Defendants seek dismissal not based on an administrative record but instead based on the facts alleged in the Complaint and the arguments described above. *See Diakanua v. Rubio*, Civ. A. No. 24-1027 (TJK), 2025 WL 958271, at *11 n.10 (D.D.C. Mar. 31, 2025) ("[T]he Court will 'follow the general practice' and deny that motion because 'the administrative record is not necessary for the

17

Court's decision."' (citation modified; quoting *Arab v. Blinken*, 600 F. Supp. 3d 59, 65 n.2 (D.D.C. 2022))). In all events, Defendants respectfully request that the Court relieve them of any purported obligation to comply with this rule. *See, e.g., id*.; *Sharifymoghaddam v. Blinken*, No. 1:23-cv-1472 (RCL), 2023 WL 8047007, at *3 (D.D.C. Nov. 17, 2023) ("In any case, courts in this District routinely allow agencies to waive compliance with Rule 7(n)(1) if 'the administrative record is not necessary for the court's decision.'" (citation omitted)).

Indeed, courts in this district routinely grant the government's requests to defer the filing of a certified list of the contents of the administrative record when it is unnecessary in deciding a dispositive motion. *See, e.g., Connecticut v. U.S. Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (Court waived Federal Defendants compliance with Local Civil Rule 7(n)); *Mdewakanton Sioux Indians of Minn. v. Zinke*, 264 F. Supp. 3d 116, 123 n.12 (D.D.C. 2017) (same); *Carroll v. Off. of Fed. Contract Compliance Programs, U.S. Dep't of Lab.*, 235 F. Supp. 3d 79, 81 n.1 (D.D.C. 2017) (same); *PETA, Inc. v. U.S. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 94 n.2 (D.D.C. 2014) (waiving compliance with Local Civil Rule 7(n) and dismissing complaint).

As a result, waiving the requirement to file a certified list of the administrative record and serve the administrative record at this juncture would promote judicial economy and conserve resources.

## CONCLUSION

For all the reasons discussed herein, the Court should grant Defendants' Motion to Dismiss.

Dated: June 25, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

NOAH T. KATZEN
Assistant Branch Director

*/s/ Heidy L. Gonzalez*
HEIDY L. GONZALEZ
(FL Bar No. 1025003)
*Trial Attorney*
U.S. Department of Justice,
Civil Division, Federal Programs
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 598-7409
Email: heidy.gonzalez@usdoj.gov

*Attorney for Defendants*

19